# BROHÄWN v. TRANSAMERICA INSURANCE COMPANY

[No. 1, September Term, 1975.]

*Decided December 3, 1975.*

Motion for reconsideration filed December 19, 1975; denied December 19, 1975.

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Francis J. Meagher,* with whom were *Goodman, Meagher & Enoch* on the brief, for appellant.

*Edward C. Mackie,* with whom were *Rollins, Smalkin, Weston & Andrew* and *Robert W. Fox* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

This case presents the question of whether an insurer is entitled to a declaratory judgment that it has no obligation

to either defend or indemnify its insured in actions brought by injured third parties based on alternative allegations of negligence and assault. The policy specifically excludes from coverage any act committed by the insured with the intent to injure, and the insured had pleaded guilty to assault in a previous criminal action arising from the same incident.

In November 1970 Mary Brohawn, the insured, and Martha Schmidt, her sister, went to a nursing home in Cumberland, Maryland, where their grandmother, Ethel Rosier, resided. The two women, accompanied by Mrs. Brohawn's son, Mark, planned to take Mrs. Rosier from the home because, as Mary Brohawn claimed, the director of the home told her sister "to come up and get my grandmother within thirty days or he was going to set her out in the street." Because of their activities at the nursing home, both Mrs. Brohawn and Mrs. Schmidt were charged in the Circuit Court for Garrett County with the assault of two nursing home employees and with the kidnapping of their grandmother, Mrs. Rosier. Testimony heard by the court before accepting guilty pleas from the women revealed conflicting accounts of what occurred at the nursing home.

Regina Gank, an employee of the home, testified that the Brohawn group arrived at the nursing home at lunch time. Mrs. Gank requested that the group wait until lunch was over to see Mrs. Rosier. Mrs. Brohawn and Mrs. Schmidt did wait as requested but, after lunch was over, proceeded to get Mrs. Rosier and take her out of the building. Mrs. Gank informed another employee, Clara Shaffer, that a patient was being taken from the home. Mrs. Gank and Mrs. Shaffer found Mrs. Brohawn and Mrs. Schmidt leading their grandmother down the front steps of the home. Each woman was on either side of Mrs. Rosier holding her up because she could not walk well by herself. Mrs. Shaffer and Mrs. Gank tried to prevent the party from leaving by grabbing Mrs. Rosier. Mrs. Gank testified that Mark Brohawn "hauled off around and hit me." Mrs. Gank then saw Mrs. Shaffer falling down the steps, and she took her hand off Mrs. Rosier so that she could catch Mrs. Shaffer.

Mrs. Shaffer testified that she and Mrs. Gank tried to

prevent the Brohawn party from leaving the home with their grandmother. According to her testimony, she and Mrs. Gank grabbed Mrs. Rosier by the arm as Mrs. Rosier was going out the front door. Mrs. Shaffer realized that Mrs. Rosier had difficulty in walking alone, but nonetheless she and Mrs. Gank struggled with Mrs. Schmidt and Mrs. Brohawn who were holding Mrs. Rosier. As they struggled, Mrs. Shaffer was "jerked around by the uniform and fell against the armrailing and hit my side and on down to the bottom floor." Mrs. Shaffer indicated that she was aware of the fact that Mrs. Rosier's family had spoken to the director and were planning to take her from the home.

Mary Jane Friend, another employee of the home, testified that she attempted to stop Mrs. Schmidt and Mrs. Brohawn as they led Mrs. Rosier from her room. She claimed that Mrs. Brohawn hit her on the arm and knocked her into a coat rack. She also claimed that she saw Mark Brohawn hit Mrs. Gank, but she did not see any altercation between Mrs. Brohawn and her sister on the one hand and Mrs. Gank and Mrs. Shaffer on the other. Mrs. Friend also testified that Mrs. Rosier could not walk well by herself and that both Mrs. Schmidt and Mrs. Brohawn were holding Mrs. Rosier as they were going down the steps.

Mary Brohawn denied that either she or Mrs. Schmidt hit anyone or that any altercation took place. The only physical contact which occurred, according to her, was when Mrs. Gank placed her arm on Mark Brohawn's shoulder, which he shrugged off. She also testified that it was cold and snowing that day and that there was snow on the pavement.

As a result of plea bargaining, both Mrs. Brohawn and Mrs. Schmidt pleaded guilty to the assault charges, and the kidnapping charges were dismissed. Both were given a suspended 30-day sentence and fined $100 and costs.

Mrs. Shaffer and Mrs. Friend each filed suit in September 1971 in the Circuit Court for Garrett County alleging that Mrs. Brohawn and Mrs. Schmidt did "with force and arms, willfully and maliciously and without any just cause or provocation" assault them, resulting in "serious, painful and permanent injuries." Both compensatory and punitive

damages were sought. Amended declarations adding a second count alleging negligence and seeking compensatory damages only were filed in November 1971. The actions were removed to the Circuit Court for Allegany County but have not yet been tried.

Superior Risk Insurance Company issued to Mary Brohawn and her husband a homeowner's policy which included "Comprehensive Personal Liability" coverage effective from June 11, 1969, to June 11, 1972. Transamerica Insurance Company acquired the policy in 1969.[1] The insurer's obligation under the "Comprehensive Personal Liability Section" is set out in the "Insuring Agreements" as follows:

> "a. Coverage E — Personal Liability. To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the *Company shall defend any suit against the Insured alleging such bodily injury* or property damage and seeking damages which are payable under the terms of this Section, *even if any of the allegations of the suit are groundless*, false or fraudulent; but the Company may make such investigation and settlement of any claim or suit as it deems expedient." (Emphasis supplied.)

This section, however, is subject to certain "Exclusions" which provide in pertinent part:

> "c. to any act committed by or at the direction of the Insured with intent to cause injury or damage to person or property."

Transamerica was notified of the original tort suits but denied coverage- and refused to defend because the declarations alleged intentional acts within the policy exclusion. Mrs. Brohawn's attorney promptly informed Transamerica of the amended declarations alleging

---

1. Superior is a subsidiary of the Ohio Farmer's Company, whose Maryland policies Transamerica acquired in 1969.

negligence and again requested that Transamerica defend. In a letter dated March 14, 1972, Transamerica informed Mrs. Brohawn that it was investigating the incident and had secured counsel to defend the suits but that such action on its part was not a waiver of any conditions of the policy or its right to deny coverage under the policy exclusions. Mrs. Brohawn was also advised that, inasmuch as the damages claimed exceeded the limits of liability coverage provided by the policy, she could have her personal attorney participate in the defense of the tort suits.

Transamerica filed this action for a declaratory judgment in the Circuit Court for Allegany County, alleging that after review of the interrogatories filed by Mrs. Shaffer and Mrs. Brohawn in the tort suits, and in light of the guilty plea in the criminal action, it concluded that the acts allegedly committed by Mrs. Brohawn were intentional and therefore excluded from coverage. Named as defendants in the declaratory judgment action were the insured Mrs. Brohawn, her sister Mrs. Schmidt, and the plaintiffs in the tort suits, Mrs. Shaffer and Mrs. Friend. Transamerica sought a declaratory judgment that it had "no coverage under the policy hereinabove set forth or any liability that may be adjudicated against [the] Defendant Mary Brohawn . . . for injuries to defendants Shaffer and Friend as a result of any acts committed by Defendant Brohawn on or about November 24, 1970, and which are the subjects of the suits hereinabove described." Transamerica also requested that it be "relieved of any obligation to defend" Mrs. Brohawn in the pending suits. Additionally, it sought to enjoin Mrs. Shaffer and Mrs. Friend from prosecuting the tort suits pending resolution of the coverage and defense questions in the declaratory judgment action. Mrs. Brohawn responded by, *inter alia,* seeking an order "that the Plaintiff be obliged to defend the said actions under its policy and to pay any damages afforded for actions covered by the policy."

A hearing was held in the declaratory judgment action, after which the court (Getty, J.) denied the relief sought by Transamerica. In its order, the circuit court held that the question of coverage would be "determined by the jury's

verdict [in the tort suits] on issues submitted as to the manner in which the injuries, if any, were sustained . . . ." The court also ordered Transamerica to defend Mrs. Brohawn "under the non-waiver agreement executed between the parties." [2]

The Court of Special Appeals sitting in banc, in a 7 - 2 decision, with Judge Lowe dissenting in an opinion joined by Judge Davidson, reversed the order of the circuit court and remanded the case to the circuit court, holding that the question of whether any injuries sustained were the result of intentional or negligent conduct should be decided in a declaratory judgment action prior to the trial of the tort suits. The Court of Special Appeals also noted that any determination in the declaratory judgment action would be res judicata in the pending tort suits, leaving only the question of damages to be resolved in the tort suits in the event that Mrs. Brohawn and Mrs. Schmidt were to be found liable in the declaratory judgment action. The Court of Special Appeals also found that if it were determined in the declaratory judgment action that Mrs. Brohawn did not injure the plaintiffs or that any injuries sustained by the plaintiffs were the result of Mrs. Brohawn's negligent conduct, Transamerica would be liable for reasonable counsel fees and expenses incurred by her in the declaratory judgment action. Because of the importance of the questions presented, this Court granted Mary Brohawn's petition for a writ of certiorari.

---

**2.** Although the circuit court's order referred to a non-waiver of rights agreement, no such agreement was executed. Transamerica, in one of its briefs in the Court of Special Appeals, suggested that the Court was referring to the letter of March 14, 1972, which provided that

". . . any action taken by the Transamerica Insurance Company, to determine the cause and other facts pertaining to the . . . incident which occurred on or about November 24, 1970, and in investigating the cause and other facts thereof, shall not waive or invalidate any of the conditions of the policy . . . and shall not waive or invalidate any rights whatever of any party to this agreement."

There is no indication that the insured agreed to this. Moreover, this letter would only relate to the insurer's right to deny coverage during the period of investigation; it does not extend to Transamerica's defense of the tort suits. Columbia Casualty Co. v. Ingram, 154 Md. 360, 364, 140 A. 601 (1928).

## (1)

The first issue raised is whether the trial court erred in denying Transamerica's request for a declaratory judgment that it not be required to indemnify Mrs. Brohawn for any damages for which she may become liable to Mrs. Shaffer and Mrs. Friend in the pending tort suits. Transamerica contends that Mrs. Brohawn's acts were intentional and therefore excluded from policy coverage. It relies on Mrs. Brohawn's plea of guilty in the criminal assault action and her failure to rebut this plea at the hearing in the declaratory judgment action. The trial court found that the plea was not conclusive on the question of whether any injuries were intentionally inflicted and found that there was sufficient evidence for a jury to find either that the plaintiffs sustained no injuries or that such injuries were caused by Mary Brohawn's negligence. It also concluded that a declaratory judgment action would not be appropriate, as the factual issues relied upon to deny coverage would be resolved by the jury in the pending tort suits.

A plea of guilty to a criminal charge may be introduced in a subsequent civil proceeding as an admission. *Campfield v. Crowther*, 252 Md. 88, 100, 249 A. 2d 168 (1969). But this admission does not conclusively establish liability. Instead, it may be rebutted or explained in the subsequent civil case in which it is admitted. *Nicholson v. Snyder*, 97 Md. 415, 425, 55 A. 484 (1903); *Teitelbaum Furs, Inc. v. Dominion Insurance Company*, 58 Cal. 2d 601, 25 Cal. Rptr. 559, 375 P. 2d 439, 441 (1962); *Farm and City Insurance Company v. Hassel*, 197 N.W.2d 360, 364 (Iowa 1972); *Glens Falls Group Insurance Corp. v. Hoium*, 294 Minn. 247, 200 N.W.2d 189, 191-192 (1972). Justice Traynor, for the Supreme Court of California, explained the reasons underlying this rule in the *Teitelbaum* case (375 P. 2d at 441):

"When a plea of guilty has been entered in the prior action, no issues have been 'drawn into controversy' by a 'full presentation' of the case. It may reflect only a compromise or a belief that paying a fine is more advantageous than litigation. Considerations

> of fairness to civil litigants and regard for the expeditious administration of criminal justice . . . combine to prohibit the application of collateral estoppel against a party who, having pleaded guilty to a criminal charge, seeks for the first time to litigate his cause in a civil action."

Consequently, Mrs. Brohawn should be given an opportunity to explain her plea of guilty to the assault charge in the pending tort actions.

While Transamerica concedes that a guilty plea may be rebutted or explained in a subsequent civil action, it contends that the plea here is conclusive because Mrs. Brohawn herself failed to explain or rebut the plea at the hearing in the declaratory judgment proceeding. We find no merit to this contention. Evidence was offered at the hearing on the petition for the declaratory judgment that the plea was the result of plea bargaining and was not an admission of actually striking either Mrs. Friend or Mrs. Shaffer. Additionally, Mrs. Brohawn testified at the criminal trial that there was no altercation and likewise denied in her answers to interrogatories in the tort action, which were introduced in the declaratory judgment hearing, that there was any physical contact with Mrs. Shaffer or Mrs. Friend.

Nevertheless, Transamerica maintains that a dispute concerning coverage still exists and that this question should have been determined by the trial court in the declaratory judgment action. A declaratory judgment would, it argues, resolve any questions common to all the parties concerning their respective rights and obligations. In support of this contention, Transamerica relies on language in *Glens Falls Ins. v. Amer. Oil Co.*, 254 Md. 120, 254 A. 2d 658 (1969), where this Court suggested that when questions involving policy coverage arise, a declaratory judgment action prior to trial of the third party suit may be desirable to resolve those questions. Although in many instances a declaratory judgment prior to trial of a pending action would be appropriate, we do not believe the circumstances here present such a situation.

A declaratory judgment action prior to the trial of a tort action against the insured may under some circumstances be a valuable means of resolving questions of policy coverage where those questions are independent and separable from the claims asserted in a pending suit by an injured third party. An early resolution could avoid unnecessary expense and delay to the parties. Thus, where an insurance company claims lack of coverage because of the insured's failure to comply with contract provisions such as the cooperation or notification clause, or failure to pay premiums, a declaratory judgment would ordinarily be appropriate and should be granted. *See Prashker v. United States Guarantee Company,* 1 N.Y.2d 584, 136 N.E.2d 871, 875 (1956); *Employers' Fire Insurance Company v. Beals,* 103 R. I. 623, 240 A. 2d 397, 401 (1968).

But here, Transamerica seeks to have resolved in a declaratory judgment proceeding questions which would be fully decided in pending tort actions. In *Grimm v. Co. Comm'rs of Wash. Co.,* 252 Md. 626, 250 A. 2d 866 (1969), we held that the trial court did not abuse its discretion in dismissing a bill for declaratory relief where the issues to be raised in the declaratory judgment proceeding would be decided in a pending criminal action. As stated in *Grimm v. Co. Comm'rs of Wash. Co., supra,* 252 Md. at 637, quoting with approval Borchard, *Declaratory Judgments* (2d ed. 1941):

> "Where an action or proceeding is already pending in another forum involving the same issues, it is manifestly unwise and unnecessary to permit a new petition for a declaration to be initiated by the defendant or the plaintiff in that suit."

* * *

> "[T]he court will refuse a declaration where another court has jurisdiction of the issue, where a proceeding involving identical issues is already pending in another tribunal, where a special

> statutory remedy has been provided, or where another remedy will be more effective or appropriate under the circumstances. In these cases it is neither useful nor proper to issue the declaration. In some of these cases, * * * the declaration is refused on jurisdictional grounds. In others, the refusal is justified on discretionary grounds."

If the issue upon which coverage is denied were not the ultimate issue to be determined in a pending suit by a third party, a declaratory judgment would be appropriate. But where, as here, the question to be resolved in the declaratory judgment action will be decided in pending actions, it is inappropriate to grant a declaratory judgment. *See also Watson v. Dorsey*, 265 Md. 509, 512, n. 1, 290 A. 2d 530 (1972).

Moreover, under the Uniform Declaratory Judgment Act, Code (1974), § 3-409 of the Courts and Judicial Proceedings Article, it is within the discretion of the court whether a declaratory judgment should be granted. In the exercise of its discretion the court should consider several factors including the effect of granting a judgment on the rights of all parties to the action. If the granting of the judgment would unduly inconvenience or burden the parties, or allow one party to wrest control of the litigation from another and cause a confusing alteration of the burden of proof, the court should refuse to grant the relief sought. *Employers' Fire Insurance Company v. Beals, supra,* 240 A. 2d at 401. Under such circumstances, granting a declaratory judgment would constitute an abuse of discretion. This principle is applicable here. Allowing Transamerica to litigate the question of whether any injuries were intentionally inflicted would permit it, and not Mrs. Shaffer and Mrs. Friend, the plaintiffs in the tort suits, to control the litigation. Transamerica would assume the burden of establishing not only that Mrs. Shaffer and Mrs. Friend were in fact injured but also that they were injured intentionally, exposing its insured Mrs. Brohawn to potential punitive damages. And Mrs. Brohawn would be forced not only to defend against

the allegations of Mrs. Shaffer and Mrs. Friend, but also against the vast resources and expertise of her insurer who would be trying to prove that which was its contractual duty to disprove.

When we suggested in *Glens Falls* that a declaratory judgment action might be the most efficient and expeditious means of resolving policy coverage disputes, we also recognized that the policy of due process and fairness "may override any considerations of efficiency or expediency served by the minimization of litigation." *Glens Falls, supra*, 254 Md. at 134. The essential unfairness to Mrs. Shaffer and Mrs. Friend of allowing Transamerica to prosecute their case, and the harsh burden of forcing Mrs. Brohawn to defend against a third plaintiff, far outweigh any possible advantages advanced by Transamerica in support of granting declaratory relief. Under these circumstances, the trial court correctly denied the declaratory judgment sought by Transamerica. *General of America Insurance Co. v. Lilly*, 258 Cal.App.2d 465, 65 Cal. Rptr. 750, 755 (1968); *United States Fidelity & Guaranty Co. v. Watson*, 106 Ga. App. 748, 128 S.E.2d 515, 518 (1962); *Employers Mutual Liability Ins. Co. of Wis. v. Bluhm*, 227 Or. 415, 362 P. 2d 755, 757 (1961); *Allstate Insurance Company v. Mahan*, 223 Tenn. 496, 448 S.W.2d 392, 393 (1969).

### (2)

The second issue raised is whether Transamerica is entitled to a declaratory judgment that it has no obligation to defend Mary Brohawn in the tort suits.

The obligation of an insurer to defend its insured under a contract provision such as here involved is determined by the allegations in the tort actions. If the plaintiffs in the tort suits allege a claim covered by the policy, the insurer has a duty to defend. *Journal Pub. Co. v. General Cas. Co.*, 210 F. 2d 202, 207, (9th Cir. 1954); *Boyle v. National Cas. Co.*, 84 A. 2d 614, 615-616, (D.C.Mun.App. 1951); *Travelers Insurance Co. v. Newsom*, 352 S.W.2d 888, 892 (Tex.Civ.App. 1961); 7A

Appelman, *Insurance Law and Practice* § 4682; Annot., 50 A.L.R.2d 458. Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy. *U.S.F.&G. v. Nat. Pav. Co.*, 228 Md. 40, 54, 178 A. 2d 872 (1962).

The amended declarations in the personal injury cases here involved, alleging negligence, clearly state claims within the coverage of the policy. While Transamerica may believe that the evidence of the guilty plea would establish that any injuries sustained by Mrs. Shaffer or Mrs. Friend were the result of intentional acts by Mrs. Brohawn, this belief will not relieve Transamerica of its duty to defend its insured in suits which allege an unintentional tort covered by the policy. The obligation is contractual and exists because of the agreement made by Transamerica with Mrs. Brohawn. Transamerica has expressly promised to "defend any suit against the Insured alleging such bodily injury . . . and seeking damages which are payable under the terms of this [policy], even if the allegations of the suit are *groundless, false,* or *fraudulent."* (Emphasis supplied.) Interpreting the same provision, Chief Judge Learned Hand said in *Lee v. Aetna Casualty & Surety Co.*, 178 F. 2d 750, 751-752 (2d Cir. 1949):

> "This language means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury 'covered' by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact 'covered.' The insurer has promised to relieve the insured of the burden of satisfying the tribunal where the suit is tried, that the claim as pleaded is 'groundless.' "

The plain meaning of this covenant is that the insurer will defend any suit stating a claim within the policy even

though "the claim asserted against the insured cannot possibly succeed because either in law or in fact there is no basis for a plaintiff's judgment." *Burd v. Sussex Mutual Insurance Company,* 56 N. J. 383, 267 A. 2d 7, 10 (1970).

Transamerica does not contend that ordinarily it would not have an obligation to defend its insured where a tort plaintiff presented claims against the insured both within and without the policy coverage. Rather, Transamerica argues that if it were to defend its insured under the circumstances here, it would be placed in the "untenable position" of attempting to cooperate in the defense of the action with its insured even though its interests are in fact adverse. This conflict of interests can best be described as follows. It would obviously be in the best interest of both the insurer and the insured if Mrs. Brohawn were found not to be liable for any injuries which may have been sustained by Mrs. Shaffer and Mrs. Friend. But if Mrs. Brohawn were to be held liable for damages resulting from her efforts to remove her grandmother from the nursing home, the interests of the insurer and insured would diverge. Mrs. Brohawn would want a finding that liability is based upon her negligent conduct, obligating the insurer to indemnify within policy limits. The insurer, on the other hand, would desire a finding that the injuries were caused by the insured's intentional conduct, thus releasing it from any duty to indemnify under the policy exclusion. In order to protect its own interests and avoid liability if it became apparent that Brohawn were liable for injuries sustained by Mrs. Shaffer and Mrs. Friend, Transamerica would want the evidence of the guilty plea in the criminal assault action introduced to establish that Brohawn's actions were, by her own admission, intentional. Transamerica concludes that this situation would be unfair and prejudicial to both parties, and that it should therefore be relieved of the obligation to defend its insured.

The promise to defend the insured, as well as the promise to indemnify, is the consideration received by the insured for payment of the policy premiums. Although the type of policy here considered is most often referred to as liability

insurance, it is "litigation insurance" as well, protecting the insured from the expense of defending suits brought against him. *International Paper Co. v. Continental Casualty Co.*, 35 N.Y.2d 322, 320 N.E.2d 619, 621 (1974). By clear and unequivocal language, Transamerica has assumed the obligation of relieving its insured of the expense of defending an action alleging and seeking damages within the policy coverage. Additionally, the insured could reasonably expect that the insurer will employ its vast legal and investigative resources to defeat the action for the mutual benefit of both the insurer and the insured. Now Transamerica seeks to deny the insured of the benefits of her contract, arguing in essence that the performance of its obligation is made more difficult by the evidence that Mary Brohawn's acts were intentional and that the performance of its obligation to defend would actually be prejudicial to Mrs. Brohawn's interests.

The fact that the promised performance of a contractual obligation may be more difficult than was expected at the time the promise was made does not discharge the promissor from his duty to perform. *Am. Tow., Etc., Co. v. Baker-W. C. Co.*, 117 Md. 660, 678, 84 A. 182 (1912); *Pennsylvania R. R. Co. v. Reichert*, 58 Md. 261, 274 (1882); 6 Corbin, *Contracts* § 1333 (1962); *see Levine v. Rendler*, 272 Md. 1, 7-12, 320 A. 2d 258 (1974). The insurer has unconditionally promised to defend the insured and therefore has assumed the risk that performance might be more difficult under some circumstances than others. Furthermore, the insurer, in drafting the policy, could have included a provision limiting its duty to defend the insured when a conflict of interests arises and could have easily avoided the difficulty it now faces. This the insurer did not do, probably because it desired to retain the absolute right to control the defense where it may be liable. The insured should not now be deprived of her contractual rights because of the failure of the insurer to limit its obligations.

Nor should Transamerica be relieved of the contractual obligation merely by asserting a conflict of interests and possible prejudice to Mary Brohawn's rights. Mrs. Brohawn

has not raised any objections to Transamerica's selecting an attorney to represent her in the tort actions. Furthermore, the rights of Mrs. Brohawn are adequately protected by the duties imposed upon the attorney representing Mrs. Brohawn by Canon 5 of the Code of Professional Responsibility, Maryland Rule 1230 and Appendix F. As this Court pointed out in *Fid. & Cas. Co. v. McConnaughy*, 228 Md. 1, 10, 179 A. 2d 117 (1962), under the Canons of Professional Responsibility, the attorney selected by the insurer to represent the insured, although employed by the insurer, still has the duty to represent the insured with complete fidelity and may not advance the interests of the insurer to the prejudice of the rights of the insured. Judge Hammond there stated for the Court (228 Md. at 10):

> "The customary clause in insurance policies requiring the insured to permit the insurer's lawyer to defend claims insured against is consent in advance by the insured to such dual representation and obviates an improper relationship, but if, in the course of the dual representation an actual conflict develops between the interests of the insured and those of the insurer, the lawyer must either withdraw entirely from the case or continue to represent one of the clients only. He can not further the interests of only one of the two while he still represents the other, or he breaches Canon [5]."

We recognize that an insured may be concerned about his contractual right to an impartial defense when his insurer raises a conflict of interest. Other courts which have considered this problem have held that an insurer is not relieved of its contractual obligation to defend the insured when a conflict of interest is asserted by the insurer and that the insurer must either provide an independent attorney to represent the insured or assume the reasonable cost of an attorney chosen by the insured, whichever the insured chooses. In *All-Star Insurance Corp. v. Steel Bar, Inc.*, 324 F. Supp. 160 (N.D.Ind. 1971), the complaint in the tort action alleged that the owner-operator of the insured

bar either negligently or intentionally shot one of the bar's patrons while attempting to close the bar for the evening. The insurer contended that the evidence it had gathered established that the insured had acted intentionally and therefore was not covered by the policy. It argued that it would be improper for it to attempt to defend the insured in an action by the customer and that it should therefore be relieved of any obligation to do so. In rejecting this argument, the court emphasized the contractual obligation which the insurer had assumed, stating (324 F. Supp. at 165):

> "However, this conflict does not relieve the insurance company of the responsibility for providing for the defense of the insured. The contractual duty which the insurance company has assumed cannot be removed by the insurer's simply creating its own conflict of interest. There is no reason to handle this situation any differently than the usual situation where the insurer has a conflict of interest. The insurer must either provide an independent attorney to represent the insured, or pay for the cost of defense incurred by the insured hiring an attorney of his choice."

In *Employers' Fire Insurance Company v. Beals, supra,* 240 A. 2d 397, the insured minor was alleged to have either "negligently and carelessly, or willfully and maliciously" struck a schoolmate in the eye with a pencil. The insurer brought a declaratory judgment action asserting a potential conflict of interest with its insured and sought to be relieved of the obligation to defend. The court noted that under the Canons of Ethics an attorney may represent conflicting interests if there has been a full disclosure of the potential conflict to the parties and the parties consent to the representation by the attorney. Thus, if the insured does consent to representation by an attorney selected by the insurance company, the potential conflict of interest should not relieve the insurer of its obligation to defend. But the court also recognized the problem which arises if the insured does not wish representation by the insurer's attorney after

disclosure of the conflict. The court held that under these circumstances, the insurer is still obligated to provide a defense for the insured, stating (240 A. 2d at 403):

> "Concerned as we are that the public's trust in the judicial processes be maintained, this court cannot stand idly by in such circumstances. We are as conscious of an insurer's concern that it control the defense of any action brought against one of its insureds as we are of an insured's expectations that his rights will be properly protected. In our opinion, however, an insured, when faced with the quandary posited by the facts of the instant case, has a legitimate right to refuse to accept the offer of a defense counsel appointed by the insurance company; and when an insured elects to exercise this prerogative, the insurer's desire to control the defense must yield to its obligation to defend its policyholder."

Other courts have likewise held that an insurer's duty to defend its insured is not relieved where a conflict of interest arises and that an insurer must provide its insured with an independent defense. *Executive Aviation, Inc. v. National Ins. Underwriters*, 16 Cal.App.3d 799, 94 Cal. Rptr. 347 (1971); *Magoun v. Liberty Mutual Insurance Company*, 346 Mass. 677, 195 N.E.2d 514, (1964); *American Employer's Insurance Co. v. Crawford*, 87 N. M. 375, 533 P. 2d 1203 (1975); *Prashker v. United States Guarantee Company, supra*, 1 N.Y.2d 584; *Steel Erection Co. v. Travelers Indemnity Co.*, 392 S.W.2d 713 (Tex. Civ. App. 1965).

Although a few courts have stated that the insurer's duty to defend is relieved where there is a conflict of interest, those cases are not persuasive authority justifying an abrogation of the contractual language imposing the duty to defend. Some of these courts, contrary to the law in this State, have considered a previous conviction or plea of guilty conclusive on the issue of whether the insured's act was intentional. *See Stout v. Grain Dealers Mutual Insurance Company*, 307 F. 2d 521 (4th Cir. 1962) (a diversity action

arising in North Carolina); *Casey v. Northwestern Security Insurance Company*, 260 Or. 485, 491 P. 2d 208 (1971). And in *Harbin v. Assurance Company of America*, 308 F. 2d 748 (10th Cir. 1962), where the court said in dicta that the duty to defend is relieved where there is a conflict of interest, the complaint against the insured alleged an intentional act only.[3]

We hold that an insured is not deprived of his contractual right to have a defense provided by the insurer when a conflict of interest between the two arises under circumstances like those in this case. When such a conflict of interest arises, the insured must be informed of the nature of the conflict and given the right either to accept an independent attorney selected by the insurer or to select an

---

**3.** The decision in Glens Falls, Inc. v. Amer. Oil Co., *supra,* 254 Md. 120, also relied on by Transamerica, is likewise distinguishable. In *Glens Falls,* the insured ran into gasoline tanks owned by the American Oil Company with his automobile. The oil company brought an action only in negligence against the insured's estate. The insurance company was informed of the action and was prepared to defend the suit but did not do so after the administrator of the insured's estate refused to sign a non-waiver agreement "upon instructions from the attorney for the American Oil Company." 254 Md. at 124-125, n. 1. A default judgment was entered in favor of the oil company when neither the insurer nor the insured's administrator defended the action. Attempts to collect the judgment from the insured's estate were unsuccessful, and the oil company brought an action against the insurer demanding payment of the judgment. The insurer raised the defense of non-coverage, claiming that its investigation of the incident revealed that the insured intentionally drove into the tanks. The issue as stated by the Court was (254 Md. at 121-122) "whether or not an insurer in the usual type of automobile liability policy may, in an action by a third party seeking indemnity under the policy, raise a defense of non-coverage based on an intentional, non-accidental act by the insured, subsequent to a judgment in favor of the third person against the insured in an action in which the declaration declared in negligence and in which the insurer was not a party and did not defend." Recognizing that collateral estoppel extends only to those issues which were actually litigated or which could have been litigated in the prior action, this Court held that the insurer was not estopped to deny coverage where it did not participate in the prior action and was not in a position to litigate the issue upon which coverage was denied. This Court relied heavily on Farm Bureau Mut. Automobile Ins. Co. v. Hammer, 177 F. 2d 793 (4th Cir. 1949), also involving the question of whether the insurer was estopped to deny coverage after the tort judgment against its insured.

While we recognize that the Court's language in *Glens Falls* went beyond the question of collateral estoppel and considered the effect of the potential conflict of interest on the insurer's duty to defend the insured, the case must be limited to the circumstances there presented. Moreover, the issue of collateral estoppel has not been raised here. For both of these reasons, Transamerica's reliance upon *Glens Falls* is misplaced.

attorney himself to conduct his defense. If the insured elects to choose his own attorney, the insurer must assume the reasonable costs of the defense provided. As the record here does not indicate whether Mrs. Brohawn would choose to be represented by an attorney selected by Transamerica, or whether she would rather select an attorney herself to defend the tort actions, she should be afforded an opportunity to make this election. If she should choose to select an attorney herself, the trial court's order directing that Transamerica defend Mrs. Brohawn should be accordingly modified. Additionally, Transamerica should be required to reimburse Mrs. Brohawn for the reasonable attorney's fees which she incurred in the present declaratory judgment action, under the holding in *Cohen v. Am. Home Assurance Co.*, 255 Md. 334, 363, 258 A. 2d 225 (1969). See also *Motorists Mutual Insurance Co. v. Trainor*, 33 Ohio St. 2d 41, 294 N.E.2d 874, 878 (1973).

> *Judgment of the Court of Special Appeals reversed.*
>
> *Case remanded to the Court of Special Appeals with instructions to remand the case to the Circuit Court for Allegany County for further proceedings consistent with this opinion.*
>
> *Costs to be paid by appellee.*