WESTERN WORLD INSURANCE COMPANY, INC., Appellant,

v.

HARFORD MUTUAL INSURANCE COMPANY, A Body Corporate, Appellee.

WESTERN WORLD INSURANCE COMPANY, INC., Appellee,

v.

HARFORD MUTUAL INSURANCE COMPANY, A Body Corporate, Appellant.

Nos. 85–1239(L), 85–1403.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1985.

Decided Feb. 25, 1986.

Howard J. Schulman, for appellant/cross-appellee.

Michael P. May (Michael P. May; Frank X. Gallagher, on brief) for appellee/cross-appellant.

Before PHILLIPS and SNEEDEN, Circuit Judges, and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.

TERRENCE WILLIAM BOYLE, District Judge:

Both parties to this suit for declaratory judgment provided insurance to the City of Cambridge, Maryland and its police employees. However, the risks insured, while similar, were not identical. Nor was the coverage identical. Under certain facts, an insurer would have primary coverage, while under other facts, its coverage would be excess.

Western World Insurance Company, Inc. (hereinafter "Western") commenced this suit against Harford Mutual Insurance Company (hereinafter "Harford") to determine, as between these insurers, which had the duty to defend, and which had the duty to pay, claims against their mutual insured arising out of a civil rights suit.

The district court, 602 F.Supp. 36 (D.C. Md.1985), after a bench trial, determined that: (1) Harford had a duty to defend the City of Cambridge and its police chief in the civil rights suit, but that Harford was

not obligated to defend Police Officer Mears in that suit and, (2) the conduct of Officer Mears, giving rise to the civil rights action, was not a risk covered by the Harford policy. Therefore Harford was under no obligation to indemnify Western for the settlement of $45,000 that Western made with the plaintiff in the civil rights suit.

On these findings and conclusions, the court allowed Western a partial recovery of its costs of defense in the civil rights suit and awarded attorney's fees in this suit to Western as a prevailing party. Both parties appeal from the adverse portions of the district court's judgment.

On appeal, Western argues that the district court erred in absolving Harford of its duty to defend Officer Mears. Consistent with this argument Western seeks reimbursement from Harford of the full settlement. Western claims that the evidence establishes that the conduct of Officer Mears was a risk covered by the Harford policy, or in the alternative, that as a matter of law Harford was bound by estoppel to reimburse Western for the reasonable settlement of the claim when Harford repudiated its duty to defend to the detriment of a junior insurer.

Harford, in turn, argues that it had no duty to defend the city or its agents based on the pleadings in the civil rights action. Therefore, Harford contends the court erred in awarding Western a recovery of attorneys fees, either in the civil rights action, or in this declaratory judgment action.

We agree on all but one point with the district court and its careful consideration of the facts and law in this case. We part company only with the ruling that Harford was excused from its duty to defend Officer Mears in the civil rights action. As to that portion of the opinion, we must reverse.

## I.

On August 8, 1981, Scott Mears, a police officer for the City of Cambridge, observed two automobiles which appeared to be racing. Timothy Sampson was driving one of the motor vehicles. Officer Mears and his partner pursued these two automobiles. Following a high speed chase through residential areas, Sampson's vehicle drove onto property belonging to a local elementary school. Sampson jumped out of his car and began running. Officer Mears gave chase on foot.

Sampson turned towards Mears after rounding the corner of a school building. Mears believed Sampson possessed a gun and was preparing to shoot. Consequently, the officer drew his service revolver and fired one bullet at Sampson. The bullet apparently ricocheted off a wall of the school building behind Sampson and struck him in the head. Mears then approached the stricken man and discovered that the gun he believed he had seen was instead a rolled-up cap.

Prior to the shooting, Harford had issued a general comprehensive liability policy covering the City of Cambridge.[1] Additionally, Harford's policy with the City expressly provided that it afforded primary insurance.

Western also had a law enforcement policy in force covering the Cambridge Police Department, the Mayor and City Council and the Police Commissioners of Cam-

---

1. This policy required Harford to:
   "[P]ay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
   A. bodily injury, or
   B. property damage
   to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage."

The policy further defined an "occurrence" as being "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

The Harford policy also contained an amendment including as "persons insured" under the policy any employee of the City acting within the scope of his duties. All parties agreed that Officer Mears was acting within the scope of his duties when the shooting occurred.

bridge.[2] Western's policy explicitly stated that it constituted excess insurance over any other valid and collectible insurance available to the insured.

Western received notice of the shooting on September 3, 1981. After receiving this notice, it retained an adjusting company to investigate the shooting. The adjusting company completed an investigation of the shooting in mid-1982. On June 11, 1982, their adjuster sent a report to Western describing the shooting as an intentional one.[3] The adjuster recommended that Western deny liability for the shooting. Western followed this recommendation.

Sampson filed a complaint alleging violations of 42 U.S.C. § 1983 in federal district court on August 5, 1982. Sampson's complaint named as defendants Officer Mears, Police Chief Russell E. Wroten of the Cambridge Police Department and the Mayor and Commissioners of the City of Cambridge. Sampson contended that Mears' shooting of Sampson was wrongful or "wantonly or grossly negligent." Sampson alleged that the police chief and the city were vicariously liable for Mears' acts and independently liable for negligent hiring and supervision.

Western retained counsel to defend the three defendants in the Sampson civil rights suit. At approximately the same time, Western's claims adjuster advised the Sampson defendants that questions existed as to coverage for this claim under Western's policy. On August 19, 1982, their claims adjuster sent letters of reservation of rights under the policy of insurance to the Sampson defendants. Harford received notice of Sampson's civil rights action on that same day.[4]

The City Attorney of Cambridge contested Western's reservations of rights. The city requested that Western pay the cost of separate counsel to represent the city itself and Police Chief Wroten because the interests of these two defendants conflicted with the interests of Officer Mears. Western agreed to this request on September 20, 1982.

On September 30, 1982, Harford informed Western that it had not decided whether it would provide a defense or indemnification in the Sampson case. Harford received a letter from Western on October 25, 1982, formally tendering the defense in Sampson to Harford. In mid-June, 1983, Harford advised Western that it would neither contribute to a defense nor provide indemnification.

In the meantime, the federal district court had dismissed several claims against Police Chief Wroten and the City of Cambridge. On July 18, 1983, a stipulation was filed in Sampson and all remaining claims against those two defendants were dismissed, leaving Mears as the only defendant. Western filed this declaratory judgment action against Harford on that same day. Western later settled with Sampson on Mears' behalf in the underlying civil

---

**2.** Western's policy required the insurer to:
"[P]ay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of negligent acts, errors or omissions of the insured as follows:
Coverage A—Personal Injury
Coverage B—Bodily Injury
to which this insurance applies, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury or bodily injury...."
The Western policy defines "bodily injury" as:
"Bodily injury, sickness or disease sustained by any person accidentally caused by any act of the insured in making or attempting to make an arrest while acting within the scope of his duties as a law enforcement officer."

The policy defines "personal injury" in pertinent part as:
"[A]ssault and battery, if committed while making or attempting to make an arrest...."

**3.** The investigation report described the shooting as follows:
"[A second police officer] jumped out and yelled 'Police' and at that point, Sampson turned with an object in his hand. It was believed to be a gun, however, later turned out to be a hat that was rolled-up. At this point, Officer Mears fired his weapon at Sampson who was approximately 50 feet away from him and running."

**4.** There is some question as to whether Harford had notice of the shooting prior to this date. However, this issue is not material to the resolution of this appeal.

rights action. Pursuant to the settlement agreement, Western paid Sampson $45,000 and Sampson executed a general release. All parties to the present case stipulated that the $45,000 settlement was a fair and reasonable one.

## II.

The district court held that Harford's duty to defend Mears was abrogated by Western's possession of facts which indicated that the shooting was an intentional act not covered under the Harford policy. We find that the district court erred in relieving Harford of its duty to defend Mears on that basis.

■ The sole controlling factor relating to Harford's duty to defend is whether the allegations contained in Sampson's complaint are such that a "potentiality" of coverage exists. An insurer has an obligation to defend an insured if, under the facts as alleged in the complaint, there is a potentiality that the claim could be covered by the policy. *Brohawn v. Transamerica Insurance Company*, 276 Md. 396, 347 A.2d 842 (1975).

Sampson's complaint alleges that Mears' conduct was wrongful or "wantonly or grossly negligent." The complaint thus leaves open the possibility that Mears acted negligently rather than intentionally in shooting Sampson. Since the complaint on its face could support a finding that Mears' shooting of Sampson was an accident, and therefore an "occurrence" covered by Harford's policy with the City of Cambridge, we find that these allegations do raise a potentiality of coverage under the Harford policy.

Harford admits that such language does create the potential of coverage under its policy with the City, but asserts that an insurer can also look to the actual facts surrounding an event to determine whether or not coverage exists, and consequently to discern whether the insured has the duty to defend. We find no case law directly supporting Harford's contentions and consider the insurer's position to be in clear conflict with the Court of Appeals of Maryland's decision in *Brohawn.*

We note that the facts which Western possessed did not clearly establish whether the shooting was intentional or unintentional—that issue was extensively debated during the bench trial and was of sufficient complexity to require extensive discussion in the court's subsequent order.

Should we allow Harford to apply this theory, then an insurer would be given the license to unilaterally resolve issues of interpretation and construction to its benefit without recourse. This theory would allow an insurer to draw its own conclusion as to the legal significance of an individual's complaint. The resolution of legal issues between the parties to a contract, even an insurance contract, is more appropriate for the court.

■ An insurer should not be called upon to be the final arbiter of these issues when, if only for appearance, its self-interest dictates an adversarial relationship with its insured. So long as a complaint raises a potentiality of coverage, an insurer is under a duty to defend an insured named in that complaint. The allegations in Sampson's complaint do raise such a potentiality of coverage. Accordingly, we reverse the trial court's holding that Harford was relieved of its duty to defend Officer Mears in the underlying civil rights action.

■ We now turn to the trial court's finding that Mears' shooting of Sampson was an intentional act and therefore outside the scope of Harford's policy. Western asserted that the officer fired by instinctive reflex action and without aiming at anything. The trial court found that Mears intentionally fired at Sampson out of fear for his own life and did not act instinctively.[5] This finding must be given due deference under the clearly erroneous stan-

---

**5.** The court noted that the Cambridge Police Department had a policy that its officers were

not to fire warning shots at any time.

dard. *See* Fed.R.Civ.P. 52(a). Western has failed to meet its burden of proving that the court's finding was clearly erroneous or an abuse of discretion.

■ Having determined that Harford had a duty to defend Mears but that Mears' conduct was an intentional act not covered by the policy, we must examine Western's final position that an estoppel arose against Harford from its breach of duty to defend. Western argues that Harford, by breaching its duty to defend each of the *Sampson* defendants, waived its right to present exclusionary defenses. Western also argues that an insurer who refuses or fails to defend its insured does so at its peril.

The issue before us is whether the trial court's refusal to apply the doctrine of equitable estoppel is clearly erroneous in light of the evidence. We find that it is not.

Whether or not estoppel arises in any case is ordinarily a question for the trier of fact to determine. *Tidewater Equipment Co. v. Reliance Insurance Co.*, 650 F.2d 503, 506 (4th Cir.1981). Given the legal components of equitable estoppel and the facts of this case, we hold that the trial court's finding denying Western's request for application of the doctrine is supported by the evidence. In fact, it is difficult to imagine how the doctrine could apply in this case, given Harford's statement to Western in September, 1982, that it had not decided whether it would defend the *Sampson* defendants, and Harford's refusal in June of 1983 to provide a defense or indemnification in the *Sampson* case. There simply was no adverse reliance by Western on any conduct of Harford that would cause an estoppel.

Turning now to Harford's appeal, Harford contests the trial court's ruling that it had a duty to defend the Cambridge Police Chief and the City of Cambridge. Sampson had alleged that the City and the Police Chief were negligent in hiring and supervising. Harford argues that supervisory liability under § 1983 may be attained only if there was a showing that the supervisors followed a "policy" which resulted in injury

to the plaintiff. Harford contends that any liability of supervisory officials must be based on intentional conduct. The insurer relies on the recent Supreme Court case of *City of Oklahoma City v. Tuttle,* —— U.S. ——, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), which holds that a "policy" for the purposes of § 1983 supervisory liability constitutes a conscious choice on the part of supervisory officials. *Id.*

■ Sampson's allegation of negligence against the City and the Police Chief puts the claim squarely within the coverage provided for in Harford's policy. Public officials can be held liable in their supervisory capacity for action amounting to something less than intentional conduct. Negligence by a state supervisory official under some circumstances may itself violate a constitutionally protected right and thereby create a colorable claim under § 1983. *See Withers v. Levine,* 615 F.2d 158, 162 (4th Cir. 1980).

■ Supervisory officials can be held liable in their supervisory capacity for negligent conduct. *Tuttle* does not represent a change in the law on this point. Accordingly, the district court's ruling that Harford was obligated to defend the City of Cambridge and the City's police chief must be affirmed.

In conclusion, since Harford had a duty to defend all of the defendants in the Sampson case, Western is entitled to recover all of its costs of defense in the Sampson case. However, since Mears' conduct was not a risk covered by Harford and no estoppel lies, Western must bear the cost of its settlement of the Sampson case. Further since Western prevailed sufficiently in this declaratory judgment action the award of attorneys fees made by the district court to Western in this case will stand. On remand the district court may enter an order settling the costs of defense in conformance with this opinion.

AFFIRMED in part,

REVERSED in part and

REMANDED with instructions.