[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 21-10675
Non-Argument Calendar

_____

D.C. Docket No. 2:19-cv-14420-RLR

THE ESTATE OF LILY COOMBS,
by and through Susan E. Corrigan, Personal Representative,

Plaintiff,

versus

ATLANTIC HEALTHCARE CENTER, LLC,
LYRIC HEALTH CARE FACILITIES, LLC,
GRANTHAM HEALTH CARE, LLC,
TIMOTHY F. NICHOLSON,

Defendants-ThirdParty Plaintiffs-Appellees,

ADD IT, LLC,
MILESTONE RETIREMENT COMMUNITIES, LLC,
SLC PROFESSIONALS CHAI, LLC,
SLC PROFESSIONALS MONARCH, LLC,
SLC PROFESSIONALS HOLDINGS, LLC, et al.,

Defendants,

versus

ARGONAUT INSURANCE COMPANY,

ThirdParty Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 24, 2021)

Before WILLIAM PRYOR, Chief Judge, WILSON and BRASHER, Circuit Judges.

PER CURIAM:

Argonaut Insurance Company appeals the summary judgment in favor of its insureds, Atlantic Healthcare Center, LLC, its parent companies, and their owner, Timothy Nicholson. Nicholson and his companies obtained a declaratory judgment that they were owed a defense under a directors and officers liability insurance policy in an action filed by the estate of a former resident of an Atlantic Healthcare nursing home. Argonaut challenges the ruling that a policy exclusion for prior wrongful acts did not apply to a complaint that Nicholson and his companies exploited a vulnerable adult. We affirm.

The Estate of Lily Coombs filed in a Florida court a complaint against Nicholson, his three partners, six entities that Nicholson and his partners jointly owned, Atlantic Healthcare, and its parent companies, Lyric Health Care Facilities, LLC, and Grantham Health Care, LLC. The complaint alleged that Coombs, a

"vulnerable adult with a long-term disability" who was unable to perform daily self-care activities, resided at the Atlantic Healthcare nursing home from January 9, 2012, until her death on December 5, 2016. The complaint described a scheme in which Nicholson used Atlantic Healthcare and its parent companies ("the Nicholson companies") as his alter egos to contract with his nursing home and to enrich the entities that he and his partners jointly owned.

The complaint alleged that Nicholson and his partners agreed "[a]t some time in 2012 . . . to operate a group of management and consulting companies[, which they jointly owned,] together as a partnership and/or joint venture partnership (the Venture)." "In or around 2012," the defendants agreed "to utilize the Venture to operate, manage, consult with, and control the day-to-day operations of" Coombs's nursing home "to generate as much profits as possible" and to avoid detection of their self-serving contracts. "To prevent scrutiny" by a regulatory agency, on May 25, 2012, Nicholson filed an application for license renewal that concealed his ownership of the nursing home.

The complaint alleged four counts. In counts one and two, the Estate complained that all the defendants assisted and conspired with the nursing home to breach duties it owed Coombs of loyalty, good faith, and fair dealing. Count one incorporated all the factual allegations in the preceding paragraphs of the complaint, and count two incorporated all the allegations in count one. In count

3

three, the Estate complained that all the defendants, except the Venture, exploited Coombs by depriving her "of the use, benefit or possession of [her] funds, assets or property" by failing to use those resources for her care. *See* Fla. Stat. § 415.1111. Count three incorporated select factual allegations in preceding paragraphs of the complaint regarding venue, jurisdiction, and prerequisites for suit. Count three also contained factual allegations concerning Coombs's exploitation, including "it is not alleged that the Defendants are an entity that established, controlled, conducted, managed or operated the Facility." In count four, the Estate complained that all the defendants conspired to exploit Coombs. *See id.* Count four incorporated all the allegations in count three.

Nicholson and his companies submitted a claim to Argonaut for coverage and a defense under the insurance policy it had issued to Lyric Health Care in Maryland. The policy covered losses of the "Company," which consisted of "the Policyholder . . . and any Subsidiary of the Policyholder," and of "Insured Person(s)," including the "director, trustee, governor, management committee member, Manager, [or] officer[s] . . . of the Company." Argonaut denied the claim in part based on an endorsement to its policy that excluded coverage for losses for conduct occurring "in whole or in part" before December 1, 2012.

> [T]he insurer shall not be liable to make payment for Loss . . . based upon, arising out of, directly or indirectly resulting from, in consequence of, attributable to or in any way involving:

1. any act, omission, fact, circumstance, situation, transaction, or event which occurred, or is alleged to have occurred, in whole or in part, prior to December 1, 2012, including any act, omission, fact, circumstance, situation, transaction, and/or event which constitutes a Wrongful Act; or

2. any other act, omission, fact, circumstance, situation, transaction, or event, whenever occurring or allegedly occurring, which together with an act, omission, fact, circumstance, situation, transaction, and/or event described in paragraph 1. above constitute Interrelated Wrongful Acts.

Argonaut stated that all allegations in the complaint related to the formation of the Venture, which occurred before December 1, 2012.

Nicholson and his companies filed a third-party complaint seeking a declaration that Argonaut owed them a duty to defend. The Florida court severed the third-party action from the Coombs action. Later, Argonaut removed the severed action to the district court. *See* 28 U.S.C. § 1332.

Both Argonaut and its insureds moved for summary judgment. Argonaut argued that its policy excluded from coverage all counts of the complaint because they were based on allegations of wrongful acts that occurred before the cut-off date. Nicholson and his companies argued that Argonaut had a duty to defend because the complaint alleged conduct that occurred or possibly occurred after the cut-off date.

The district court granted summary judgment in favor of Nicholson and his companies. The district court ruled that Argonaut had a duty to defend because the

allegations in the complaint left "open the potential—however slight" that

Nicholson "could have joined the Venture after [the cut-off date of] December 1,

2012, and still have done so 'in or around 2012' or 'at some time in 2012.'" The

district court determined that "a claim based on" or interrelated with Nicholson's

wrongful act on May 25, 2012, was a prior act excluded from coverage and that

incident was "incorporated in Counts 1 and II alleging claims for breach of

fiduciary duties." But the district court ruled that Argonaut had a duty to defend

because the incident was "specifically not incorporated in Counts III and IV

alleging exploitation of a vulnerable adult" and the "claim . . . that [Nicholson and

his companies] exploited Ms. Coombs by using her property for their benefit

instead of for her support . . . ha[d] naught to do with the false statement

[Nicholson filed] on May 25, 2012."

We review *de novo* a summary judgment. *Amerisure Mut. Ins. Co. v.*

*Auchter Co.*, 673 F.3d 1294, 1295 n.2 (11th Cir. 2012). Summary judgment is

appropriate when "there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under Maryland law, which the parties agree applies, "insurance contracts

are construed as ordinary contracts." *Nat'l Union Fire Ins. Co. of Pittsburgh v.*

*David A. Bramble, Inc.*, 879 A.2d 101, 109 (Md. 2005). Their interpretation

"begins with the language employed by the parties." *MAMSI Life & Health Ins.*

*Co. v. Callaway*, 825 A.2d 995, 1005 (Md. 2003). And all "terms of the contract are accorded their customary, ordinary, and accepted meanings." *Walk v. Hartford Cas. Ins. Co.*, 852 A.2d 98, 106 (Md. 2004).

In Maryland, "[a]n insurance company has a duty to defend its insured for all claims that are potentially covered under the policy." *Id.* That duty "is determined by the allegations in the tort action[]." *Id.* (quoting *Brohawn v. Transamerica Ins. Co.*, 347 A.2d 842, 850 (Md. 1975)). When "a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy." *Id.* (quoting *Brohawn*). "If there is any doubt as to whether there is a duty to defend, it is resolved in favor of the insured." *Id.* at 106–07. And so long as "any claims potentially come within the policy coverage, the insurer is obligated to defend all claims." *Utica Mut. Ins. Co. v. Miller*, 746 A.2d 935, 940 (Md. 2000).

Argonaut had a duty to defend the suit against Nicholson and his companies because the complaint alleges a wrongful act potentially covered by their insurance policy. By its plain terms, the endorsement to the policy excluded from coverage wrongful acts and acts interrelated with a wrongful act that occurred before December 1, 2012. That exclusion did not apply to the Estate's complaint in count three that Nicholson, his companies, his partners, and their jointly-owned entities

exploited Coombs. Count three alleges no date when any defendant misused Coombs's property. And count three did not incorporate the earlier allegation about Nicholson's wrongful act of filing a false application on May 25, 2012, or share a common nexus with that distinct activity. So the defendants could have exploited Coombs in the years after the cut-off date while she continued to live at the nursing home. Because Nicholson and his companies could have exploited Coombs after December 1, 2012, their claim possibly is covered by the policy they bought from Argonaut, and it has a duty to defend them.

Argonaut argues that it owes no duty to defend because "all of the acts undertaken by Defendants were part and parcel of the Venture's conspiracy" and involved interrelated wrongful acts that preceded the cut-off date. But the Venture was not named in count three as a perpetrator who exploited Coombs. *See* Fla. Stat. § 415.1111 ("A vulnerable adult who has been . . . exploited . . . has a cause of action against any perpetrator . . . ."). And the specific allegations unique to the count for exploitation eliminated the Venture as a perpetrator by stating that the defendants were not "an entity that established, controlled, conducted, managed or operated the Facility."

Argonaut also argues, for the first time, that it owes no defense because Nicholson and his companies filed a single claim for coverage and some counts of the complaints against them involve wrongful acts that preceded the cut-off date

8

and are excluded from coverage. In the district court, Argonaut argued that the wrongdoing that formed the basis for each count of the complaint was interrelated. We decline to address the merits of a theory Argonaut raises for the first time on appeal. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

We **AFFIRM** the summary judgment in favor of Atlantic Healthcare, its parent companies, and Nicholson.