642 A.2d 896

**ARTRA GROUP, INC.**

v.

**AMERICAN MOTORISTS INSURANCE COMPANY.**

**No. 370, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

June 13, 1994.

Kathleen Gallogly Cox (J. Van L. Dorsey and Venable, Baetjer and Howard, on the brief), Towson, for appellant.

Michael W. Morrison (Lisa Najem Flanagan, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, Deborah L. Robinson and Kenny, Vettori & Robinson, Baltimore, on the brief), for appellee.

Argued before BLOOM, FISCHER and MOTZ, JJ.

BLOOM, Judge.

In this declaratory judgment case, the Circuit Court for Baltimore City granted the relief sought by American Motorists Insurance Company (AMICO): a declaration that AMICO did not owe a duty to its insured, ARTRA Group, Inc. (ARTRA), either to defend ARTRA in an environmental damage action brought against it by the Sherwin–Williams Company or to indemnify ARTRA for any damages Sherwin–Williams might recover in that action.

Appealing from that judgment, ARTRA presents four issues:

1. Did the trial court err in ruling that Maryland law controls substantive contract issues governing the policies of insurance issued by AMICO to ARTRA?

2. Did the trial court err in failing to deny AMICO's motion for summary judgment under controlling Illinois law?

3. Even if Maryland law were deemed to apply, did the trial court err in granting summary judgment when a

potentiality for coverage exists on claims for environmental damages asserted against ARTRA in the Sherwin–Williams suit?

4. Did the trial court err in denying ARTRA's motion to dismiss AMICO's complaint for declaratory relief to permit resolution of disputed factual issues in the Sherwin–Williams suit?

## Background

On 25 August 1980, ARTRA sold five parcels of improved property, approximately twenty acres, located on Hollins Ferry Road in Baltimore City (the Hollins Ferry site) to Sherwin–Williams. The Hollins Ferry site had been operated as a paint manufacturing plant since the mid–1940's. During the period from 1946 through 1960, the plant was operated by a partnership known as Baltimore Paint and Color Works. In June 1960, the tract was purchased by Baltimore Paint and Chemical Corporation, which later merged into ELT, Inc. ELT, Inc. subsequently changed its name to Dutch Boy, Inc.; the name was finally changed to ARTRA Group, Inc., in January 1981.

## The Insurance Policies

From 1 April 1976 through April 1985, AMICO issued a series of nine comprehensive general liability policies to ARTRA or its predecessor companies. Each of these policies contains the following general insuring obligation:

[P]ay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of A. bodily injury or B. property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of this suit are groundless, false or fraudulent....

Each of the policies also contains a pollution exclusion, which limits the scope of the general insuring language. The

policies provide a broad exclusion of coverage for pollution damages except where the damage is caused by an event that is "sudden and accidental." The pertinent exclusion language of the policies reads:

This insurance does not apply under Part 7:

. . . . .

(f) to bodily injury or property damage arising out of the discharge, disbursal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, disbursal, release or escape is sudden and accidental.

AMICO also issued a single Comprehensive Catastrophe Umbrella Policy, covering the period from 30 September 1976 through 1 May 1978. The Umbrella Policy contains virtually identical insuring language.

Each AMICO policy insuring ARTRA and its predecessors was issued in Illinois. ARTRA, as was ELT, Inc., was headquartered in Northfield, Illinois.[1] AMICO is also headquartered in Illinois, and each of the policies was countersigned on behalf of AMICO in Illinois.

## The Sherwin–Williams Suit

In December 1991, Sherwin–Williams filed, in the United States District Court for the District of Maryland, a complaint

---

1. The initial insurance contract issued by AMICO to an ARTRA company was issued on April 1, 1976, when ARTRA operated as ELT, Inc. and reportedly maintained its corporate headquarters in New Jersey. The 1976 Annual Report for Dutch Boy, Inc., the successor corporation to ELT, Inc., however, indicates that Dutch Boy, Inc., was headquartered in Northfield, Illinois in 1976. Furthermore, amendments to the 1976 policy reflect corporate holdings in Illinois, as well as a midterm change of insured to Dutch Boy Paint, which was headquartered in Illinois. All subsequent policies issued by AMICO to ARTRA reflect that ARTRA was headquartered in Northfield, Illinois. The policies themselves are multi-site policies, covering facilities in numerous states. Each policy provides a comprehensive scheme for coverage of multi-state facilities in any given year.

against ARTRA and other prior owners of the Hollins Ferry site, asserting claims for cost recovery, compensatory damages, and declaratory relief relating to damages Sherwin–Williams alleges it incurred, or may incur in the future, in response to the release and threatened release of hazardous substances at the Hollins Ferry plant site. ARTRA requested AMICO to defend the Sherwin–Williams suit, but AMICO refused either to defend that suit or to indemnify ARTRA in the event a judgment were awarded against ARTRA therein. That decision was based solely on AMICO's review of the allegations against ARTRA in the Sherwin–Williams suit.

The complaint filed by Sherwin–Williams contains broad ranging allegations regarding the means by which the Hollins Ferry site became contaminated. The suit seeks to recover damages for the collective effects of these various forms of contamination. The spectrum of allegations range from claims of leaking storage drums and underground tanks to various spills and other releases of hazardous substances. Some allegations involve claims of contamination caused by long standing deficiencies in plant operation, whereas other alleged sources were relatively sudden releases caused during normal operations either by negligence or accident.

### AMICO's Complaint For Declaratory Relief

AMICO's Complaint for Declaratory Relief, filed in the Circuit Court for Baltimore City, sought a declaration that it neither owed a duty to defend nor an obligation to indemnify ARTRA on the claims asserted in the Sherwin–Williams Suit. ARTRA filed an Answer, together with a Counterclaim seeking a declaration that AMICO, at a minimum, owed a duty to defend ARTRA in the pending Sherwin–Williams suit, because a potentiality for coverage existed. ARTRA also filed a Motion to Dismiss AMICO's Complaint for Declaratory Relief on the indemnity obligation, alleging that various key factual issues raised in the declaratory action were inextricably intertwined with facts to be determined in the Sherwin–Williams suit. Accordingly, ARTRA claimed that declaratory relief regarding AMICO's obligation to indemnify ARTRA for

claims asserted in the Sherwin–Williams suit was both premature and prejudicial.

AMICO opposed the Motion to Dismiss and simultaneously moved for summary judgment, stating there was no potentiality for coverage under the policies issued to ARTRA and therefore no obligation to provide a defense to ARTRA in the Sherwin–Williams suit. ARTRA opposed the Motion for Summary Judgment and asserted that controlling Illinois law dictated a finding that the pollution exclusion at issue was ambiguous and, therefore, must be construed against the insurer. ARTRA further argued that the factual record was insufficient to support the entry of summary judgment. Finally, ARTRA argued that, under either governing Illinois or Maryland law, a potentiality for coverage existed on the claims asserted against ARTRA in the Sherwin–Williams suit.

Following argument on the motions, the court ruled that, although the contracts of insurance were entered into by AMICO and ARTRA in Illinois, for conflict of law purposes the court would apply the substantive law of Maryland, because of the strength of Maryland's public policy on environmental issues. The court further determined that, under Maryland law, the "sudden and accidental" policy exclusion was clear and unambiguous. Finally, the court concluded that the allegations against ARTRA in Sherwin–Williams's complaint did not constitute "sudden and accidental" conduct and, therefore, no potentiality for coverage existed under AMICO's policies. On those bases, the court entered summary judgment in favor of AMICO on its complaint for declaratory relief and denied ARTRA's motion to dismiss as moot.

## I.

■ The Court of Appeals has stated that, generally, the appellate courts of this State should review a grant of summary judgment only on the grounds relied on by the trial court. *Federated Dept. Stores, Inc. v. Le,* 324 Md. 71, 79, 595 A.2d 1067 (1991); *Boyer v. State,* 323 Md. 558, 588, 594 A.2d 121 (1991). The proper standard for reviewing the grant or

denial of a summary judgment is whether the trial court was legally correct. *Beatty v. Trailmaster Prods., Inc.,* 330 Md. 726, 737, 625 A.2d 1005 (1993); *Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 592, 578 A.2d 1202 (1990). In this case, the lower court judge was not legally correct on either the choice of law issue or the potentiality for coverage issue.

## A.

█ AMICO argued on appeal, as it did below, that, if *lex loci contractus* factors lead to a determination that the contract was made in a forum other than Maryland, the court should then apply renvoi principles and look at the law of the other forum to see if it would refer back to Maryland on substantive law issues. AMICO asserts that the lower court was correct, setting forth the following analysis: 1) the court first determines where the contract was entered into, in this case, Illinois; 2) the court then must look to Illinois law to see what law Illinois would apply; 3) Illinois would apply the law of Maryland, because Illinois would deem Maryland, as the place where the property is located, as having the most significant interest; 4) therefore, the substantive law of Maryland should be applied. AMICO points out that Illinois follows § 193 of the Restatement (Second) of Conflict of Laws, which provides that the choice-of-law issue, with respect to casualty insurance contracts, is

> determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship ... to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws, § 193 (1971).

This Court, in *Commercial Union Insurance Co. v. Porter Hayden Co.,* 97 Md.App. 442, 630 A.2d 261, *cert. granted,* 333 Md. 201, 634 A.2d 62 (1994), recently addressed the choice of law question. In *Porter Hayden,* an asbestos manufacturer

sought a declaration of the duty of its insurer, Commercial Union, to defend and potentially to indemnify Porter Hayden in connection with certain liability lawsuits filed against Porter Hayden. The lower court determined that Maryland law governed. This Court held that New York law applied because the last act necessary to give the policy binding effect occurred in New York, when the policy was delivered to Porter Hayden's insurance broker.

Judge Harrell, for this Court, wrote:

When presented with choice-of-law questions, Maryland courts generally follow the rule of *lex loci contractus,* which requires that the construction and validity of a contract be determined by the law of the state where the contract was made. *Allstate Ins. Co. v. Hart,* 327 Md. 526, 529 [611 A.2d 100] (1992); *Kramer v. Bally's* Park Place, Inc., 311 Md. 387, 390 [535 A.2d 466] (1988); *Comstock Ins. Co. v. Thomas A. Hanson & Assocs., Inc.,* 77 Md.App. 431, 438 [550 A.2d 731] (1988). For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs. *Sting Sec., Inc. v. First Mercury Syndicate, Inc.,* 791 F.Supp. 555, 558 (D.Md.1992); *Travelers Indem. Co. v. Allied–Signal, Inc.,* 718 F.Supp. 1252, 1253 (D.Md.1989).

*Porter Hayden,* 97 Md.App. at 451, 630 A.2d 261.

Each AMICO policy states, "[T]his policy shall not be valid unless countersigned ... by a duly authorized representative of the company." AMICO countersigned the policy in Illinois; thus, Illinois is where the last act necessary occurred.

■ Contrary to AMICO's argument, Maryland has not adopted the *renvoi* doctrine. AMICO relies heavily on *Travelers Indemnity Co. v. Allied Signal, Inc.,* 718 F.Supp. 1252 (D.Md.1989), in which the United States District Court for the District of Maryland (Motz, J.), purportedly following Maryland law with respect to insurance policies in a case involving environmental clean-up costs, referred to the *renvoi* doctrine in holding that Maryland law applies because New York and New Jersey, where the policies were issued, would apply Maryland law. We declined to adopt that reasoning in *Porter*

*Hayden,* continuing to follow the *lex loci contractus* rule despite the fact that New York, where the insurance policies were issued, would have applied Maryland law by virtue of § 193 of the Restatement (Second) of Conflicts of Laws. We noted that Maryland had not yet adopted § 193 of the Restatement although it had followed § 187 of the Restatement of Conflict of Laws (1971) in *Kronovet v. Lipchin,* 288 Md. 30, 415 A.2d 1096 (1980). 97 Md.App. at 457, 634 A.2d 62. That section, however, is inapplicable in the case *sub judice.* Applying only to situations in which the contract contains a clause specifying that the law of a particular state would govern, § 187 provides that the state contractually chosen by the parties must have a substantial relationship to the parties or the transaction. ' In the absence of a contractual choice-of-law provision, as in this case, § 193 would be the applicable rule in a jurisdiction that has adopted the Restatement 2d approach. Maryland has not yet done so.

AMICO also relies on *Bethlehem Steel v. G.C. Zarnas & Co.,* 304 Md. 183, 498 A.2d 605 (1985), to support its contention that Maryland applies the doctrine of *renvoi* as part of its choice of law analysis. In *Bethlehem Steel,* the Court of Appeals held that it was proper to apply Maryland law instead of Pennsylvania law to an indemnity provision in a construction contract made in Pennsylvania because of Maryland's strong public policy against clauses in construction contracts indemnifying a party against the result of his own negligence. AMICO, as did the lower court judge, confuses the public policy exception to the *lex loci contractus* rule with the *renvoi* doctrine, in which the forum state applies the law of the state where the contract was made, including that state's law governing choice of laws. If the forum state, in looking to the whole body of law of the state where the contract was made, discerns that that state would, in turn, apply the law of the forum state because of its law concerning choice of laws, the forum state will apply its own law, because in doing so it is applying the *lex loci contractus.* In *Bethlehem Steel,* the *lex loci contractus* was rejected, not followed, because the parties had contracted in Pennsylvania to do something that is toler-

ated by Pennsylvania common law but is specifically forbidden by a Maryland statute. 304 Md. at 191, 498 A.2d 605.

In the case *sub judice*, the lower court judge properly determined that Illinois law should apply because the policies were issued in that state. He went a step further, however, holding that Illinois would apply Maryland law, not because of Illinois's adoption of § 193 of Restatement 2d, but because of Maryland's strong public policy on environmental claims. That determination was erroneous in two respects: (1) Illinois would apply Maryland law because of its own law regarding choice of laws, not because of Maryland's public policy; and (2) Maryland has no strong public policy governing the issue before the court.

■ In *Black v. Leatherwood Motor Coach Corp.*, 92 Md. App. 27, 606 A.2d 295, *cert. denied, Leatherwood Motor Coach Corp v. Martinez*, 327 Md. 626, 612 A.2d 257 (1992), this Court reaffirmed the restricted nature of the public policy exception to the general rule of *lex loci contractus*. We declined to apply Maryland law imposing a cap on damages to an action governed by New Jersey law, despite the strong public policy considerations that gave rise to the damage cap. This Court wrote:

> The question whether Maryland's public policy is sufficiently strong to preclude application of another state's law involves more than a determination that the law of the two states are different. It is sufficiently strong where the General Assembly of Maryland "has specifically addressed the issue and has unequivocally told the Maryland judiciary that [it] is void and unenforceable." In such a case, the law of *lex locus contractus* will not apply if the other state is contrary to Maryland law.

*Black v. Leatherwood Motor Coach Corp.*, 92 Md.App. 27, 46, 606 A.2d 295 (1992). The party who seeks to overturn the general rule of *lex loci contractus* bears a "heavy burden" to establish that Maryland public policy is sufficiently strong to warrant overriding the otherwise controlling law of another jurisdiction. *Id.* at 48, 606 A.2d 295.

It is true that the legislature of this state has expressed a strong public policy regarding the protection of the land and citizens of Maryland from pollution, and it has taken a strong position regarding the clean-up of pollution. *See Bausch & Lomb Inc. v. Utica Mutual Insurance Co.,* 330 Md. 758, 785, 625 A.2d 1021 (1993) (citing Md.Code (1982, 1987 Repl.Vol., 1992 Cum.Supp.) §§ 4–402, 9–302(b) of the Environment Article). Nevertheless, Maryland has *no* strong public policy regarding *who pays* for the clean-up. That issue is controlled by the contract between insured and insurer.

This case is similar to *Bausch & Lomb* in that the dispute turns strictly on the question of which party to an insurance policy shall, or in the present case may be obligated to, pay for the clean-up of a polluted site. The Court of Appeals has held that "that question is governed by the contract between insurer and insured." *Bausch & Lomb Inc. v. Utica Mutual Insurance Co.,* 330 Md. 758, 790, 625 A.2d 1021 (1993). "Maryland courts are reluctant to obviate voluntary bargains on public policy grounds, and to diminish the public interest in having individuals and corporations exercise broad powers as they structure their own affairs." *Id.,* 330 Md. at 790, 625 A.2d 1021 (citing *Finci v. American Casualty,* 323 Md. 358, 378–379, 593 A.2d 1069 (1991)).

Under the doctrine of *lex loci contractus,* which is still the law of Maryland, the lower court erred in granting summary judgment on the ground that, because of Maryland's public policy, insurance contracts between the parties are to be governed by the law of Maryland.

### B.

■ The lower court ruled that, under Maryland case law, the allegations in the Sherwin–Williams suit did not constitute "sudden and accidental" conduct and, accordingly, no potentiality for coverage existed under AMICO's policies. Relying on this Court's decision in *Bentz v. Mutual Fire,* 83 Md.App. 524, 575 A.2d 795 (1990), the lower court also ruled that the language of the contract, specifically the "sudden and acciden-

tal" language of the pollution exclusion clause, was clear and unambiguous.

ARTRA refers us to the case of *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204 (1992), in which the Supreme Court of Illinois, construing a liability insurance contract containing a pollution exclusion unless the cause of the pollution was "sudden and accidental," held that the term "sudden," as used in that exclusion exception, is ambiguous. The Court further held that since, under Illinois law, an ambiguous term in an insurance policy must be construed in favor of the insured, "sudden" must be taken as meaning only unexpected or unintended.

In the complaint filed by Sherwin–Williams against ARTRA, there are allegations that at least some of the pollution at the site occurred under circumstances that might well be deemed to be "sudden and accidental" under either construction of that language. In addition to alleging that ARTRA and its predecessors negligently and illegally stored drums of hazardous and toxic chemicals on the site and that many of those drums leaked their contents onto the ground, Sherwin–Williams's complaint alleged, *inter alia*, that spills of hazardous substances occurred as a result of regular operations of the plant; that during filling operations some tanks were negligently filled beyond capacity causing overflows of hazardous materials to be released into the soil; and that drums of hazardous materials were negligently handled and some were punctured by forklifts. On the basis of those allegations, we believe that whether the "sudden and accidental" language of the exception to the pollution exclusion clause is interpreted to mean "precipitous" or "abrupt" and accidental (Maryland view) or "unintended" or "unexpected" and accidental (Illinois view), the lower court erred in concluding that no potentiality for coverage exists under the AMICO policies. Therefore, even if Maryland had adopted § 193 of the Restatement (Second) of Conflicts of Laws or the doctrine of *renvoi*, we would still reach the same result—reversal of the lower court's decision and remand for entry of a declaratory judgment that

AMICO is obligated to defend ARTRA in the Sherwin–Williams case.

## II.

The Sherwin–Williams suit alleges numerous activities that purportedly gave rise to contamination on the Hollins Ferry site. Thus, key factual issues remain to be determined in the Sherwin–Williams suit as to the manner of contamination and the corresponding corporate liability for those acts. The facts to be determined that would identify the means of contamination are crucial to a determination of whether the source of contamination was "sudden and accidental." If the source of the contamination is found to have been "sudden and accidental," and if ARTRA is found to be responsible, then AMICO will have to indemnify ARTRA. In any event, if the potentiality for such coverage exists, under the allegations of the action against its insured, then AMICO is contractually obligated to defend ARTRA in that action. *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 347 A.2d 842 (1975).

Appellant argues that pre-tort declaratory actions to resolve factual issues presented in pending tort suits are generally not allowed, citing *Allstate Ins. Co. v. Atwood,* 319 Md. 247, 572 A.2d 154 (1990). It also argues that, when coverage issues are intertwined with or essentially identical to issues in the underlying suit, they should not be resolved in a separate declaratory action. *7416 Baltimore Ave. Corp. v. Penn America Insurance Co.*, 83 Md.App. 692, 699, 577 A.2d 398, *cert. denied,* 321 Md. 164, 582 A.2d 499 (1990). ARTRA cites *Allstate Ins. Co. v. Atwood,* and *Travelers Indemnity Co. v. Ins. Co. of North America,* 69 Md.App. 664, 671, 519 A.2d 760 (1987) for the proposition that a pre-tort declaratory judgment action is inappropriate if a fact that is central or material to establishing the tort liability of the insured in the underlying suit would also establish the insured's liability under its duty to indemnify. *See also Brohawn v. Transamerica Ins. Co., supra,* 276 Md. at 406, 347 A.2d 842.

■ As *Brohawn* points out, there are two issues involved in cases of this nature: (1) the contractual duty of the insurer to defend the insured in the tort action against the insured and (2) the contractual duty of the insurer to indemnify the insured in the event of a judgment against the insured in the tort action (coverage). The duty to defend arises if there is a mere · potentiality of coverage under the allegations of the complaint in the underlying tort action. The coverage question may have to await the outcome of the tort case. With respect to the coverage issue, the Court of Appeals stated in *Allstate Ins. Co. v. Atwood,* stated, "[I]t is only where the alleged conduct of the insured as to one or more of the claims made is patently outside the terms of the insurance contract, and as a matter of law is excluded from the policy, that a pre-tort trial declaratory judgment should be rendered." 319 Md. at 254–255, 572 A.2d 154 (citations omitted).

We believe that at least some of the allegations in the Sherwin–Williams suit against ARTRA are of negligent conduct causing property damage by discharge or escape of toxic chemicals that could well be determined to have been "sudden and accidental." Consequently, at least some of the alleged negligent conduct of the insured cannot be deemed to be "patently outside the terms of insurance contract." It was improper, therefore, for the lower court to grant summary judgment rendering a declaratory judgment that AMICO owed no duty to defend ARTRA with respect to the Sherwin–Williams suit. Instead, the court should have declared that AMICO was obligated to defend ARTRA in the Sherwin–Williams case. But since the ultimate question as to coverage will be decided in the Sherwin–Williams case, no declaration should have been granted with respect to AMICO's duty to indemnify ARTRA against any damages that might be awarded in that case.

JUDGMENT REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.