677 A.2d 617

**Rocco LUPPINO**

v.

**VIGILANT INSURANCE COMPANY.**

**No. 1497, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

June 4, 1996.

Thomas A. Farrington (Ann Wittik-Bravmann and Farrington and Christian, on the brief), Upper Marlboro, for Appellant.

Valerie L. Tetro (Joseph F. Cunningham and Joseph F. Cunningham & Associates, on the brief), Washington, DC, for Appellee.

Argued Before WILNER, C.J., EYLER, J., and JAMES S. GETTY, Judge (Retired), Specially Assigned.

WILNER, Chief Judge.

The ultimate issue in this appeal is one of insurance coverage; the particular issue is whether appellant Rocco Luppino's suit against Vigilant Insurance Company is barred by limitations. The Circuit Court for Prince George's County held that

it was and granted the insurer's motion for summary judgment. We shall reverse that judgment.

Luppino once owned a home in Prince George's County protected by a Quality Protection Homeowner's policy issued by Vigilant. On June 24, 1986, he sold the home to Stephen Gray and Mary Soraci and, upon that sale, cancelled the policy.[1] In April, 1989, Mr. Gray and Ms. Soraci sued appellant in the Circuit Court for Prince George's County for fraud, intentional concealment, and negligent misrepresentation in connection with the sale. The suit was apparently based on the buyers' discovery of extensive termite damage, rotting wood, and other deficiencies.

Luppino was served with process on November 1, 1989, and he promptly forwarded the complaint, along with an answer he had filed through his personal attorney, to Vigilant, requesting that it provide a defense. On January 19, 1990, Vigilant responded that it had accepted the defense of the case under a "full Reservation of Rights." Pointing to various provisions of the policy, the company explained that there was no coverage for damage to the property prior to the transfer of ownership on June 24, 1986, that there was no coverage for damage sustained after cancellation of the policy, and there was no coverage for property damage arising out of any act intended to cause such damage. There was apparently some question at the time as to when the policy was actually cancelled. The insurer stated that it would provide a defense but that, should a judgment be obtained that fell within the noted exclusions or outside the policy period, satisfaction of the judgment would be Luppino's responsibility, not that of Vigilant.

On October 19, 1990, Vigilant notified Luppino that it had changed its position. The company concluded that the policy had been cancelled effective June 24, 1986 and that, as a result, there was no coverage. Citing the various policy

---

1. It appears that, on July 9, 1986, Luppino's attorney wrote to Vigilant requesting cancellation of the policy effective June 24, 1986, that, on August 8, 1986, the policy was cancelled effective June 24, and that a part of the premium was then rebated.

provisions and defenses noted in its earlier letter, Vigilant ended with the statement that "[t]herefore, due to the fact the allegations fall outside of the policy period and within the above referenced exclusions, we must advise you we are specifically denying coverage, indemnity and defense for this lawsuit. . . . " The company said that it would continue the defense through the firm it had designated for 30 days to give Luppino time to choose another lawyer and that it reserved the right to amend the letter if new information developed showing that any policy provision had been violated or, in the alternative, if the underlying complaint was amended to bring the matter within the policy coverage.

In December, 1991, the plaintiffs amended their complaint to add additional counts of intentional omission, breach of contract, and tortious breach of contract, but there was no change in Vigilant's position.

Luppino employed new counsel, and the case proceeded to trial. On May 4, 1992, a jury returned a verdict for the plaintiffs based on intentional misrepresentation, intentional concealment, negligent misrepresentation, and intentional omission, in the amount of $97,787 compensatory damages and $82,000 punitive damages. Luppino appealed. In August, 1993, in an unreported opinion, we affirmed the judgment, and, on September 13, 1994, the Court of Appeals also affirmed. *Luppino v. Gray*, 336 Md. 194, 647 A.2d 429 (1994).

On May 31, 1994, Luppino filed this action against Vigilant for damages arising from its refusal to provide a defense to the Gray/Soraci action. In December, 1994, he amended his complaint to add a count for breach of the duty to pay the judgment rendered in that case. Prior to the amendment, Vigilant had filed a motion for summary judgment based on limitations, which the court had denied. In January, 1995, following the amendment, Vigilant asked the court to reconsider its ruling, arguing that limitations had run on both actions—that based on the duty to defend and that based on the duty to indemnify. The court granted the motion to reconsider and, ultimately, the motion for summary judgment. Rely-

ing on *American Home Assurance v. Osbourn,* 47 Md.App. 73, 422 A.2d 8 (1980), the court held that both causes of action arose on October 19, 1990, when Vigilant informed Luppino that it was denying coverage, and that the action first filed in May, 1994 was too late.

## DISCUSSION

Both parties cite Federal and out-of-State cases in support of their respective positions. In our view, this case can be decided under prevailing Maryland case law. We need to distinguish, however, between an action for breach of the duty to defend and one for breach of the duty to pay. We shall begin with the latter.

### (1) *Duty to Pay*

Md.Code Cts. & Jud. Proc. art., § 5–101 provides generally that a civil action at law shall be filed within three years from the date it accrues. The question, then, is when Luppino's action for breach of the duty to pay accrued. That, in turn, requires us to examine the nature of the duty.

The coverage in question is provided in Section II, Coverage E of the policy. That coverage obligates Vigilant "to pay on behalf of the insured, up to our limit of liability, the **ultimate net loss** which the insured becomes legally obligated to pay because of **personal injury** or **property damage.**" The term "ultimate net loss" is defined in the policy as "all damages which an **insured** becomes legally obligated to pay because of **personal injury** or **property damage.**"

Luppino argues that he did not become legally obligated to pay damages to Gray and Soraci until the Court of Appeals affirmed the judgment against him in September, 1994. Vigilant, on the other hand, though seemingly acknowledging that Luppino might be correct if Vigilant had actually defended the action through to judgment, contends that, because it disclaimed the duty to defend as well, both causes of action accrued on the day it informed Luppino that there was no coverage. Relying, as did the court, on *American Home*

*Assurance v. Osbourn, supra,* 47 Md.App. 73, 422 A.2d 8, and two Federal cases (*Cardin v. Pacific Employers Ins. Co.,* 745 F.Supp. 330 (D.Md.1990) and an unpublished Opinion of the Fourth Circuit Court of Appeals in *Millham v. Globe Am. Cas. Co.,* No. 89–2846, 1990 WL 122068, Opinion filed August 24, (1990)), Vigilant urges that the limitations period commenced at that point because Luppino knew then that he would have to defend the case and pay any judgment himself.

 Although there are some out-of-State cases supporting the proposition, we do not agree with Luppino that the action accrued only when the Court of Appeals affirmed the judgment, and we most assuredly do not agree with Vigilant that the action for breach of the duty to pay accrued when it first denied coverage. We conclude that Luppino's obligation became legally fixed, and thus the duty to pay arose, when the judgment was entered against him by the circuit court in May, 1992. That judgment, of course, was subject to being upset on appeal, but it was valid, final, and, unless stayed through the posting of acceptable security, was subject to execution at that point.

Because Vigilant places so much emphasis on *American Home Assurance v. Osbourn* and *Cardin,* we shall begin with a discussion of those cases.

Osbourn operated a car-towing service. He was sued for trespass and conversion by the owners of cars that he towed from a prohibited parking zone at the Capital Center, under contract with the Center and upon direction from the police. On September 11, 1974, his insurer declined coverage on the ground that the action was based on intentional acts, for which no coverage was afforded by his policy. Osbourn defended the actions, which, in December, 1977, ultimately settled. On September 25, 1978, he sued both his insurer and the agent from whom he procured the insurance. The action against the agent was based on negligence and breach of warranty for not procuring complete coverage.

The court granted summary judgment for the agent based on limitations. The action against the insurer was tried to

verdict, which was favorable to Osbourn. The insurer appealed the judgment against it, and Osbourn appealed the judgment in favor of the agent. Limitations was not raised as a defense to the action against the insurer, and that issue was therefore not addressed by us. We reversed the judgment against the insurer because we concluded that there was no "occurrence," which was a prerequisite to coverage. We did discuss the limitations question with respect to the agent, however. The critical question, we said, was the date "when Osbourn knew or should have known that his insurance broker sold him an insurance policy which was inadequate because it afforded incomplete coverage." 47 Md.App. at 86, 422 A.2d 8. Osbourn argued that the limitations period did not commence until his damages were ascertained, which was when he settled the underlying cases in December, 1977. We rejected that approach and concluded instead that the action accrued when the insurer denied coverage. It was then that Osbourn knew, or should have known, of the deficiency in the policy and of the fact that he would have to defend the actions himself and thereby incur expense.

That aspect of *American Home Assurance* is completely inapposite to this case. The alleged duty of the agent was to procure complete insurance, and the breach of that duty, along with the assurance of damage, became clear when the insurer declined coverage. Vigilant's duty here is quite different; it is to pay any "ultimate net loss" that Luppino becomes "legally obligated to pay because of personal injury or property damage." Vigilant's declaration of no coverage did not establish, or even trigger, any ultimate net loss that Luppino would be obligated to pay.

*Cardin* is likewise inapplicable with respect to the obligation to pay. That case involved the duty to provide a defense, in particular whether a malpractice carrier was obliged to pay the expenses of the insured's personal counsel, notwithstanding that it had provided a defense through attorneys of its own choosing. The District Court, following our *American Home Assurance* case, concluded that limitations began to run on Cardin's action against his insurance company when the insur-

er notified him that it would not pay the fees of his personal attorney, rather than when the underlying case was eventually settled. As with *American Home Assurance*, the case did not involve the duty to pay a successful claim.

One of the points made by Vigilant in support of its theory is that Luppino could have filed a declaratory judgment action to test Vigilant's defense immediately following its October, 1990 letter, postulating that, as such an action could have been filed then, limitations must have started to run at that time. We disagree.

Luppino may have been able to file a declaratory judgment action upon receipt of Vigilant's letter, to test whether the company had a duty to defend and pay, although, given the several defenses raised in that letter, it is not entirely clear from the record now before us that such an action could have proceeded while the underlying action was still pending. The Court of Appeals has carefully limited declaratory judgment actions prior to trial of the underlying case to those instances in which the coverage questions are "independent and separable from the claims asserted in a pending suit by an injured third party." *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 405, 347 A.2d 842 (1975); *Allstate Ins. Co. v. Atwood*, 319 Md. 247, 252, 572 A.2d 154 (1990).[2]

Even if a declaratory judgment, or other, action could have been filed earlier to test the validity of Vigilant's position, however, the failure to file one does not necessarily affect the running of limitations with respect to a breach of contract action for damages. The Declaratory Judgment Act itself makes clear that a declaratory judgment action to construe a contract may be filed "before or after a breach of the con-

---

**2.** One of the defenses to coverage raised by Vigilant was that the policy did not cover intentional harm. As noted, one of the claims in the Gray/Soraci suit was for negligent misrepresentation. To the extent that coverage hinged on the nature of Luppino's conduct—whether it was intentional or merely negligent—that issue would necessarily have to be determined in the underlying litigation and thus, under *Brohawn* and *Atwood,* would be inappropriate for resolution in a pre-trial declaratory judgment action.

tract." Md.Code Cts. & Jud. Proc. art., § 3–407. Indeed, a principal function of a declaratory judgment proceeding generally is to resolve disputes over statutes, contracts, and other legal documents and relationships *before* an actual breach and injury occurs. Obviously, an action for damages based on breach of contract cannot be filed until there has, in fact, been a breach.

Apart from that, in *Atwood,* the Court expressed the view that declaratory judgment actions in advance of the tort trial, even where permissible, "should not be encouraged" (*id.* at 255, 572 A.2d 154), and indeed "should be rare" (*id.* at 254, 572 A.2d 154), and thus held that an insurer's failure to test coverage prior to trial of the underlying action will not operate as an estoppel or waiver. Nor, for the same reason, should the insured be penalized for waiting.

That view is consistent with the approach taken in *Lane v. Nationwide Mut. Ins. Co.,* 321 Md. 165, 582 A.2d 501 (1990). The plaintiffs in that action (the Lanes) were injured when their car collided with another vehicle. They sued the other driver and owner in December, 1982, although they were then aware that those defendants were uninsured. The Lanes notified their insurer, Nationwide, of the lawsuit and the fact that the defendants were uninsured. Nationwide remained passive. In April, 1986, the Lanes sued Nationwide to collect uninsured motorist benefits under their policy. The insurer successfully moved for summary judgment on limitations, convincing both the trial court and this Court that the cause of action accrued when the Lanes first discovered that the defendants were uninsured.

The Court of Appeals reversed, holding that the insured need not make demand on his company for uninsured motorist benefits until after pursuing the uninsured defendant and that no action for breach of contract accrues until the insured demands payment and it is refused. An anticipatory repudiation, the Court held, does not cause limitations to begin running.

■ The important point in *Lane* is that an action by an insured against his insurer for breach of a contractual duty imposed in the policy is governed by the principles applicable to breach of contract actions. The threshold issues are the nature of the duty and when it was breached. Here, as we have indicated, the duty was to pay an ultimate net loss that Luppino became legally obligated to pay. Notwithstanding the possible right to have the dispute over coverage resolved earlier through a declaratory judgment action, that duty was not, in fact, breached until a judgment was rendered against Luppino that he was legally obligated to pay, and that did not occur until May 4, 1992. *See,* in general, 20 Appleman, *Insurance Law and Practice,* § 11416: "Ordinarily, the fixing of liability against an insured by judgment is a prerequisite to suit against a liability insurer." Also, 20A Appleman, *Insurance Law and Practice,* § 11614: "Under a policy of liability insurance, the contractual period generally commences to run at the time of entry of judgment against the insured, unless the finality of such judgment has been postponed by the pendency of an appeal." [3]

### (2) *Duty to Defend*

We turn, now, to the action based on the duty to defend. That duty, of course, arose in November, 1989, when Luppino informed Vigilant of the lawsuit that had been filed against him, and it clearly was breached on October 19, 1990, when the company expressly declined to provide the defense.

■ The duty to defend is broader than and different from the duty to pay. *See* 7C Appleman, *Insurance Law and Practice,* § 4684 at 83–85. The latter ordinarily depends on the eventual outcome of the underlying case—whether it results in a judgment for the plaintiff and, if so, whether the

---

3. Two rather old California and New York cases are cited for the proposition that an appeal may postpone the running of the statute. We have expressed some reservation about that approach under Maryland law, in that an appeal, by itself, does not postpone the finality of the judgment. It is not an important issue in this case, however.

basis for that judgment is conduct within the policy coverage. The former is not so tightly based. Absent some special limiting provision in the policy, an insurer generally has a contractual duty to defend "if there is a *potentiality* that the claim could be covered by the policy." *Brohawn v. Transamerica Ins. Co., supra,* 276 Md. at 408, 347 A.2d 842. That issue, in other words, may be more easily determined in advance of a judgment in the underlying litigation, although, as noted in *Atwood,* even there, pre-litigation declaratory judgment actions are not favored unless the coverage issue is clearly separate from any issue likely to be resolved in the underlying litigation.

There is another important difference between the two obligations. Unlike the duty to pay, which becomes fixed upon the rendition of a judgment (subject to increases for post-judgment interest and costs if it is not discharged promptly), the duty to defend is necessarily a continuing one that commences upon notice of the claim and extends at least until a judgment is entered and all appeals from it have been resolved. The duty thus arises at an earlier point than the duty to pay and may extend to a later time. The amount of damage from a breach cannot realistically be determined until the entire case is over, because they continue to accrue, incrementally, throughout the course of the litigation.

Faced with a refusal of the insurer to defend a claim, the insured has three possible options, other than acquiescence: he can, to the extent permitted by *Atwood,* file a declaratory judgment action, presumably at any point along the way; he can bring one or more successive actions to recover his interim and incremental costs as the case proceeds, subject to the defense against multiple, vexatious actions; or, as here, he can wait until the end when all of his damages are ascertained and then sue for the entire breach. Of the three choices, the third, in most instances, will be the most practical and efficient. That the others may, in given circumstances, be possible should not, therefore, preclude it.

We recognize that a different view was expressed by our Federal colleague in *Cardin*. In point of fact, we do not necessarily disagree with the result reached in that case. As we indicated, the suit was not the typical action to recover damages for a refusal to defend. The company *did* defend Cardin. The suit was to recover fees he voluntarily paid to his private counsel, and, although the action was framed as emanating from the duty to defend, an arguably more persuasive case can be made for commencing the statute of limitations from the time the company informed Cardin that it did not intend to pay those fees. To the extent the court relied on *American Home Assurance* for the proposition that, in all instances, an action based on breach of the duty to defend commences when the insurer declines coverage, we simply do not agree and thus reject that approach.

Upon this analysis, we conclude that, although Luppino might have been able to file suit earlier, the statute of limitations did not begin to run on the action for breach of the duty to defend until the Court of Appeals affirmed the judgment in the underlying case. It was then that the final breach became manifest and the ultimate injury measurable.

JUDGMENT REVERSED; APPELLEE TO PAY THE COSTS.