723 A.2d 14

**VIGILANT INSURANCE COMPANY**

v.

**Rocco LUPPINO.**

**No. 88, Sept. Term, 1996.**

Court of Appeals of Maryland.

Jan. 20, 1999.

Valerie L. Tetro (Joseph F. Cunningham, Joseph F. Cunningham & Associates, on brief), Washington, DC, for Petitioner.

Thomas A. Farrington, Bowie, for Respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI *, and RAKER, JJ., and ROBERT C. MURPHY, C.J. (Retired, Specially Assigned).

ELDRIDGE, Judge.

This case presents the question of when the statute of limitations began to run on an insured's claim that an insurer breached its duty to defend the insured in a tort suit by a third party against the insured.

## I.

Rocco Luppino owned a home and was insured under a homeowner's insurance policy issued by Vigilant Insurance Company effective from August 7, 1985, to August 7, 1986. The policy provided coverage for property damage as well as personal liability. The property damage section of the policy included coverage for the insured's home, related structures, and certain types of personal property owned by the insured. The personal liability section of the policy provided coverage for damages which the insured was legally obligated to pay for personal injury or property damage to a third party.

The policy contained the following provisions. "Personal injury" as defined by the policy

"includes but is not limited to:

a. bodily injury, sickness, disease, disability, shock, mental anguish or mental injury;

b. false arrest or false imprisonment, wrongful entry or eviction, wrongful detention; malicious prosecution or humiliation; and

c. libel, slander, defamation of character or invasion of right of privacy. . . ."

---

* Karwacki, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of this opinion.

"Property damage" was defined in the policy to mean "injury to or destruction of tangible property and the resulting loss of use of that property...."

Under the personal liability coverage, Vigilant was obligated to provide a defense to Luppino in suits by third parties for property damage or personal injury. Vigilant agreed to

"defend any suit against an insured which seeks damages for personal injury or property damage. We shall defend even if the suit is groundless, false or fraudulent. However, we may make investigation, negotiation and settlement of any claim or suit as we wish."

The policy contained the following exclusions from the personal liability coverage:

"Coverage E—Personal Liability does not provide coverage for:

\* \* \*

"property damage to any property owned by an insured;

\* \* \*

"[and] does not apply to personal injury or property damage:

"... arising out of any act intended by an insured to cause personal injury or property damage. However, this policy does apply to personal injury or property damage which result from an insured trying to protect persons or property...."

The policy also contained the following provision, commonly referred to as a "no-action clause":

"No legal action shall be brought against [the insurer]:

"a.    unless the insured has fully complied with all the terms of this section; and

"b.    until the amount of the insured's ultimate net-loss has been finally settled. This amount may be determined either by judgment against the insured, or by written agreement signed by the insured, the claimant and [the insurer]."

The policy defined "ultimate net-loss" as "all damages which an insured becomes legally obligated to pay because of personal injury or property damage."

The instant action arose as a result of the following events. After advertising his house for sale in January 1986, Luppino entered into a contract for the sale of the house to Joseph Gray and his wife, Mary Soraci. Settlement occurred on June 24, 1986. On August 8, 1986, Luppino's attorney wrote to Vigilant, stating that the house was sold on June 24th and requesting a return of premiums for the period after June 24th. As required by the contract of sale, Luppino on or before June 24th, 1986, presented Gray and Soraci with a report by a pest control service stating that "no visible evidence of infestation from wood destroying insects was observed at the house." Luppino did not, however, disclose to Gray and Soraci the existence of extensive termite damage apparent in a crawl space under the den, which was concealed by a wall constructed by Luppino. While electrical work was being performed on the house in October 1986, the crawl space and termite damage were discovered. Eventually it became evident that the house had been seriously infested by termites and was structurally unsound, requiring extensive repairs.

In February 1989, Gray and Soraci filed in the Circuit Court for Prince George's County a complaint against Luppino which, as amended, sought both compensatory and punitive damages for fraud, "intentional concealment," negligent misrepresentation, and "intentional omission." After a jury trial in May 1992, judgment was entered in favor of Gray and Soraci for $97,787 compensatory damages and $82,000 punitive damages. Luppino appealed to the Court of Special Appeals which affirmed in an unreported opinion. Luppino then filed a petition for a writ of certiorari which this Court granted. *Luppino v. Gray*, 333 Md. 173, 634 A.2d 47 (1993). This Court affirmed the judgment of the Court of Special Appeals. *Luppino v. Gray*, 336 Md. 194, 647 A.2d 429 (1994).[1]

---

1. The issue presented to this Court was whether an individual, such as Luppino, had a state constitutional right to a non-jury trial. This issue

When service in the tort suit filed by Gray and Soraci was made on Luppino in 1989, Luppino's attorney gave notice of the suit to Vigilant and requested a defense under the personal liability provisions of the policy. Vigilant agreed to defend the tort suit under a reservation of rights. In October 1990, however, Vigilant changed its position and sent a letter to Luppino "completely deny[ing] coverage, defense and indemnity for the damages alleged" by Gray and Soraci, stating that

"it is the position of Vigilant Insurance Company there is no coverage for any damage sustained by the structure identified in the Complaint prior to the transfer of ownership on June 24, 1986. Furthermore, it is the position of Vigilant Insurance Company that there is no coverage for any damage sustained by the structure after cancellation of the aforementioned policy. Lastly, it is the position of the Vigilant Insurance Company that there is no coverage for property damage arising out of an act intended to cause such damage."

Vigilant indicated, however, that this denial of coverage was not necessarily final, stating:

"We reserve the right to amend this letter if and when new information is developed or obtained showing that any policy provision may have been violated, or, in the alternative, whether any amendment to the Complaint are [sic] made which might bring this matter under the purview of coverage."

Luppino, with his own attorney, proceeded to defend the suit by Gray and Soraci without any assistance from Vigilant, resulting in the judgment against him. Luppino also was represented by his own attorney in the appellate proceedings.

---

arose as a result of Gray's and Soraci's failure to request a jury trial when they filed the initial complaint. They subsequently requested a jury trial in an amendment to the complaint two years later. The trial court denied Luppino's motion to strike this belated jury trial demand. Luppino argued in this Court that under the Maryland Constitution and the circumstances of the case, he had a right to a non-jury trial. This Court rejected Luppino's constitutional argument and affirmed the judgment in favor of Gray and Soraci.

As mentioned previously, this Court affirmed the judgment in an opinion filed in September 1994. While the case was pending in this Court, however, Luppino, on May 31, 1994, filed a complaint in the Circuit Court for Prince George's County against Vigilant alleging breach of the duty to defend contained in the insurance policy. Subsequently, Luppino amended his complaint to include a count for breach of the duty to indemnify.

Vigilant, in September 1994, filed a motion for summary judgment on the ground that Luppino's complaint was barred by the statute of limitations, Maryland Code (1974, 1995 Repl.Vol.), § 5–101 of the Courts and Judicial Proceedings Article, which states as follows:

"A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."

Vigilant argued that Luppino's causes of action for breach of the duty to defend and breach of the duty to indemnify accrued in October 1990 when Vigilant denied coverage under the policy and refused to provide a defense. Therefore, according to Vigilant, Luppino's action filed in May 1994 was time barred because it was filed more than three years from the date of accrual. Luppino opposed the motion for summary judgment, and the circuit court initially denied the motion. Upon Vigilant's motion to reconsider, the circuit court granted the motion for summary judgment, holding that the statute of limitations had run on both the count for breach of the duty to defend and the count for breach of the duty to indemnify.

Luppino appealed to the Court of Special Appeals which reversed. *Luppino v. Vigilant Insurance Co.*, 110 Md.App. 372, 677 A.2d 617 (1996). The intermediate appellate court, in an opinion by Chief Judge Wilner, considered the duty to indemnify and the duty to defend separately. Regarding the duty to indemnify, the court held that the duty did not arise, and thus Luppino's cause of action for breach of the duty did

not accrue, until judgment was entered against Luppino in the underlying suit. The intermediate appellate court pointed out that under the policy Vigilant was only required to pay Luppino's "ultimate net loss," defined in the policy as "all damages which an insured becomes legally obligated to pay because of personal injury or property damage." The Court of Special Appeals reasoned that Luppino became legally obligated to pay when judgment was entered against him. Regarding the duty to defend, the Court of Special Appeals stated that "the duty to defend is necessarily a continuing one that commences upon notice of the claim and extends at least until a judgment is entered and all appeals from it have been resolved." *Luppino v. Vigilant Insurance Co., supra,* 110 Md.App. at 382, 677 A.2d at 622. Based on the continuing nature of the duty to defend, the Court of Special Appeals concluded that the statute of limitations on Luppino's claim for breach of the duty did not begin to run until the Court of Appeals affirmed the judgment in the underlying tort action.

Vigilant filed in this Court a petition for a writ of certiorari challenging the Court of Special Appeals' decisions both with regard to the duty to indemnify and with regard to the duty to defend. We denied the petition insofar as it related to the duty to indemnify, and we granted the petition insofar as it related to the duty to defend. We limited our review to the following issue:

"When did the statute of limitations begin to run on the claim by [Luppino] that [Vigilant] allegedly breached its covenant in its homeowner's policy to defend [Luppino] against the claim or claims asserted against [Luppino] by Stephen Gray and Mary Soraci?"

We shall affirm.

## II.

An insurer's obligation to defend is contractual, and, therefore, a cause of action for breach of the duty to defend sounds in contract. *See, e.g., Sherwood v. Hartford,* 347 Md. 32, 41–43, 698 A.2d 1078, 1082–1083 (1997); *Litz v. State*

*Farm,* 346 Md. 217, 225, 695 A.2d 566, 569 (1997); *Sheets v. Brethren Mutual,* 342 Md. 634, 644, 679 A.2d 540, 545 (1996); *Am. Motorists Ins. Co. v. ARTRA Group, Inc.,* 338 Md. 560, 569–573, 659 A.2d 1295, 1299–1301 (1995); *Bankers & Shippers Ins. v. Electro Enterprises,* 287 Md. 641, 649, 415 A.2d 278, 283 (1980); *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 408, 347 A.2d 842, 850 (1975). Generally, a cause of action for breach of a contract accrues, and the statute of limitations begins to run, when the plaintiff knows or should have known of the breach. *See Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677 (1981). Vigilant, therefore, argues that Luppino's cause of action for breach of the duty to defend accrued, and the statute of limitations began to run in this case, when Vigilant sent its letter denying coverage in October 1990. According to Vigilant, it was at that point that the alleged breach occurred, and Luppino had knowledge of the breach. Vigilant's position is that, upon its denying coverage in October 1990, Luppino should have brought a declaratory judgment action to determine whether there was coverage under the insurance policy.

Vigilant is correct insofar as it argues that the alleged breach of the duty to defend initially occurred in October 1990 when the insurer denied any coverage. As we recently held in *Sherwood v. Hartford, supra,* 347 Md. at 48, 698 A.2d at 1085, "the duty to defend arises upon the happening of the insured event but ... the duty is not breached until, after notice of the event, the insurer unjustifiably declines to fulfill its obligations...."

Nevertheless, as the Court of Special Appeals held, the duty to defend, by its very nature, is a continuing one that extends throughout the tort suit by the third party against the insured. *See, e.g., Paul Holt Drilling, Inc. v. Liberty Mut. Ins. Co.,* 664 F.2d 252, 255 (10th Cir.1981) ("the insurer's obligation to defend [is] one that continues throughout the course of the litigation against the insureds"); *Home Savings Assoc. v. Aetna Casualty and Surety Co.,* 109 Nev. 558, 565, 854 P.2d 851, 855 (1993) ("An insurer obligated by contract to

defend an insured owes the insured a continuing duty to defend, and this duty continues throughout the course of the litigation against the insured").

■ If Vigilant owed a duty to provide legal defense services to Luppino, it was a duty which continued throughout the tort case and until the tort litigation was terminated. In this situation, an insured would ordinarily have three years from the termination of the litigation to sue the insurer for compensation for the legal services which the insured had been forced to pay for. As explained by this Court many years ago in *W., B. & A. Elec. R.R. Co. v. Moss*, 130 Md. 198, 204–205, 100 A. 86, 89 (1917), in which compensation was sought for services rendered over a period of time,

> "[t]he general rule seems also settled that in the computation of the statutory period, in cases where there is an undertaking which requires a continuation of services, or the party's right depends upon the happening of an event in the future, the statute begins to run only from the time the services can be completed or from the time the event happens."

*See, e.g., Hecht v. Resolution Trust*, 333 Md. 324, 337,. 635 A.2d 394, 401 (1994) ("Maryland has recognized ... [certain] common law theories which depart from the strict 'date of the wrong' rule of accrual. The 'continuation of events' theory was first recognized by this Court in *W., B. & A. Elec. R.R. Co. v. Moss"*). *Cf. Hilliard & Bartko v. Fedco Systems*, 309 Md. 147, 157–158, 522 A.2d 961, 966–967 (1987).

Courts have applied the above-quoted principle under circumstances like those in the case at bar. In *Lambert v. Commonwealth Land Title Ins. Co.*, 53 Cal.3d 1072, 1075, 282 Cal.Rptr. 445, 446, 811 P.2d 737, 738 (1991), for example, the Supreme Court of California rejected the insurer's argument that the insured's ̇cause of action had accrued when the insurer denied coverage, and held that "the statute of limitations for the ... insurer's breach of the duty to defend commences when final judgment is entered in the underlying

litigation." In doing so, the court pointed out that adoption of the insurance company's position often

> "would allow expiration of the statute of limitations on a lawsuit to vindicate the duty to defend even before the duty itself expires. This grim result is untenable. The insured must be allowed the option of waiting until the duty to defend has expired before filing suit to vindicate that duty.
>
> "Allowing this option is equitable. It is harsh to require an insured—often a private homeowner—to defend the underlying action, at the homeowner's own expense, and *simultaneously* to prosecute—again at the homeowner's own expense—a separate action against the title company for failure to defend. '[T]he unexpected burden of defending an action may itself make it impractical to immediately bear the additional cost and hardship of prosecuting a collateral action against an insurer.' " 53 Cal.3d at 1077–1078, 282 Cal.Rptr. at 447–448, 811 P.2d at 740.

The court in *Colpan Realty Corp. v. Great American Ins. Co.*, 83 Misc.2d 730, 732, 373 N.Y.S.2d 802, 804 (1975), aptly stated:

> "The breach was not complete until final dismissal for until such event [the insurer] could have assuaged [the insured's] grief, sealed the breach and redeemed its wrong by taking up the cudgels of the action. Although afforded the opportunity [the insurer] did not rise to the occasion. The action therefore accrued when the breach was complete and the failure to perform was final, to wit, [the date the appeal was dismissed.]"

Many other courts have reached the same conclusion. *See, e.g., Israelsky v. Title Ins. Co. of Minnesota,* 212 Cal.App.3d 611, 261 Cal.Rptr. 72 (1989); *Continental Casualty Co. v. Florida Power & Light Co.,* 222 So.2d 58 (Fla.App.), *cert denied,* 229 So.2d 867 (1969); *Sandbulte v. Farm Bureau Mut. Ins. Co.,* 343 N.W.2d 457 (Iowa 1984); *Home Savings Assoc. v. Aetna Casualty and Surety Co., supra,* 109 Nev. 558, 854 P.2d 851; *Terteling v. United States,* 334 F.2d 250, 167 Ct.Cl. 331 (1964); *Boyd Bros. Trans. Co., Inc. v. Fireman's Fund Ins. Cos.,* 540 F.Supp. 579 (M.D.Ala.1982), *aff'd,* 729 F.2d 1407

(11th Cir.1984); *Oliver B. Cannon and Son, Inc. v. Fidelity and Casualty Co. of New York,* 484 F.Supp. 1375 (D.Del.1980); *Moffat v. Metropolitan Casualty Ins. Co. of New York,* 238 F.Supp. 165 (M.D.Pa.1964).

We agree with these decisions. It would be unfair to start the running of the statute of limitations from the date Vigilant first denied coverage in this case in light of the continuing nature of Vigilant's duty to defend. An insured should be allowed to expect the insurer to step in and cure its breach so long as the underlying action is continuing. This is particularly so in the instant case because the letter denying coverage which Vigilant sent to Luppino specifically reserved the right of Vigilant to change its position regarding coverage and the provision of a defense. In addition, the insurance policy issued by Vigilant purported to preclude Luppino from bringing *any* action against Vigilant prior to a final determination of his liability in the underlying tort action.

Vigilant also argues that a declaratory judgment action could have been brought by Luppino against Vigilant in October 1990 and that, therefore, the statute of limitations began to run in October 1990. As pointed out by our predecessors in *W., B. & A. Elec. R.R. Co. v. Moss, supra,* 130 Md. at 205, 100 A. at 89, the statute of limitations

" 'does not attach to a claim for which there is no right of action, and does not run against a right for which there is no corresponding remedy or for which judgment can not be obtained. The true test therefore to determine whether a cause of action has accrued is to ascertain the time when plaintiff could have first maintained his action to a successful result. The fact that he might have brought a premature . . . action is immaterial.' "

*See Goldstein v. Potomac Elec. Power Co.,* 285 Md. 673, 684, 404 A.2d 1064, 1069 (1979) (statute of limitations ordinarily begins to run "when the plaintiff could have maintained his action to a successful result"); *James v. Weisheit,* 279 Md. 41, 44, 367 A.2d 482, 484 (1977). Vigilant maintains that, upon receipt of the October 1990 letter denying coverage, Luppino

could have obtained a declaratory judgment declaring whether there was coverage under the homeowner's insurance policy. This is so, the insurer asserts, because "Vigilant's declination letter presents textbook examples of coverage issues that are separate and distinct from issues raised in the underlying [tort] action." (Petitioner's brief in this Court at 20). According to Vigilant, any contention that a declaratory judgment action would have been "dismissed contravenes established case law and is therefore legally incorrect." (*Ibid.*) Luppino, on the other hand, argues that the coverage issues were not entirely separate from the issues in the tort suit and that a declaratory judgment determining coverage could not have been obtained prior to a trial of the underlying tort action.

Our cases have repeatedly pointed out that declaratory judgment actions conclusively to determine liability insurance coverage, "by or against the tortfeasor's liability insurer, in advance of a determination of liability in a tort suit, are normally precluded except when the issues in the declaratory judgment action are independent and separable from the claims of the tort claimant." *Washington Transit v. Queen*, 324 Md. 326, 333 n. 6, 597 A.2d 423, 426 n. 6 (1991). *See, e.g., Litz v. State Farm, supra*, 346 Md. at 233, 695 A.2d at 574 ("When a question sought to be resolved in the declaratory judgment proceeding would be decided in the pending tort action, however, it is ordinarily inappropriate to grant a declaratory judgment prior to resolution of the underlying tort trial"); *Brohawn v. Transamerica Ins. Co., supra*, 276 Md. at 405–407, 347 A.2d at 848–850. Although a declaratory judgment finally determining *coverage* is normally precluded in advance of the underlying tort suit unless the issues are independent and separable from the issues in the tort action, a declaratory judgment before trial of the tort action, determining whether there is a potentiality of coverage and thus a duty to defend, may be appropriate. *See, e.g., Litz v. State Farm, supra*, 346 Md. at 225–226, 695 A.2d at 569–570; *Sheets v. Brethren Mutual, supra*, 342 Md. at 639, 679 A.2d at 542; *Aetna v. Cochran*, 337 Md. 98, 104–108, 651 A.2d 859, 862–864 (1995), and cases there cited.

■ Nevertheless, even when declaratory judgment actions to determine coverage are permitted before a trial of the underlying tort action, they are not favored. *Chantel Associates v. Mt. Vernon,* 338 Md. 131, 147, 656 A.2d 779, 787 (1995); *Allstate Ins. Co. v. Atwood,* 319 Md. 247, 254–255, 572 A.2d 154, 157 (1990). As Judge Chasanow pointed out for the Court in the *Chantel* case, 338 Md. at 149, 656 A.2d at 788,

> "it is within the trial court's discretion to defer resolution of an issue presented in a declaratory judgment action until the time of trial of the underlying tort action, even if that issue is one which is 'independent and separable' from the issues to be resolved at the underlying tort trial."

Furthermore, in the *Atwood* case, 319 Md. at 255, 572 A.2d at 158, we stated:

> "Moreover, even when an insurer is convinced that the insured's alleged tortious conduct is patently excluded from the coverage, the insurer is not required to bring a pre-tort trial declaratory judgment action in order to preserve the insurer's position. Because declaratory judgment actions in advance of the tort trials should not be encouraged, the insurer's failure to bring such a declaratory judgment action, or to take an appeal from the dismissal of such an action without a declaration, will not operate as an estoppel or a waiver against the insurer."

For the same reason, the insured should not be prejudiced by his or her failure to seek a declaratory judgment prior to the trial of the underlying tort suit. Consequently, limitations should not begin to run against the insured because the insured failed to bring a pre-tort trial declaratory judgment action.

The Court of Special Appeals correctly held that Luppino's action was not barred by limitations.

*JUDGMENT AFFIRMED. PETITIONER TO PAY THE COSTS.*