**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1995**

MARTIN JENNINGS CURRY, D.C.,

             Plaintiff – Appellant,

       v.

TRUSTMARK INSURANCE COMPANY; CONTINENTAL ASSURANCE COMPANY,

             Defendants – Appellees.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   James K. Bredar, District Judge.
(1:11-cv-02069-JKB)

Argued: October 29, 2014          Decided: February 6, 2015

Before GREGORY, AGEE, and DIAZ, Circuit Judges.

Affirmed by unpublished opinion.  Judge Diaz wrote the opinion,
in which Judge Gregory and Judge Agee joined.

**ARGUED:** Elijah Dale Adkins, III, SALSBURY, CLEMENTS, BEKMAN,
MARDER & ADKINS LLC, Baltimore, Maryland, for Appellant.  Jason
Allen Walters, BRADLEY ARANT BOULT CUMMINGS, LLP, Birmingham,
Alabama, for Appellees.  **ON BRIEF:** Emily C. Malarkey, SALSBURY,
CLEMENTS, BEKMAN, MARDER & ADKINS LLC, Baltimore, Maryland, for
Appellant.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Martin Curry filed a lawsuit contending that Trustmark Insurance Company breached the parties' contract by refusing to pay benefits to Curry under a disability insurance policy. The district court disposed of Curry's action at summary judgment on the basis that it was largely barred by Maryland's statute of limitations. On the portion of Curry's action that fell within the limitations period, the district court ruled against Curry on the merits. We affirm the district court's judgment based on our conclusion that Curry's suit is time-barred in its entirety.

I.

Curry, a chiropractor operating his own practice, owned a disability insurance policy originally purchased from Continental Assurance Company and later assigned to Trustmark Insurance Company. In pertinent part, the policy provided that the insurance company would pay monthly benefits to Curry if a physical disability prevented him from working as a chiropractor. In order to determine Curry's eligibility for benefits, the policy also required him to submit written and continuing proof of loss and, if necessary, to submit to an independent medical examination ("IME").

In 2003, Curry injured his back while performing an adjustment on a patient. He underwent spinal surgery and

2

applied for disability benefits in early 2004. Trustmark began paying benefits to Curry, subject to Curry's providing information regarding the extent of his injury, condition, and expected recovery. For the next three years, Trustmark paid Curry monthly benefits under his insurance policy, all while attempting to establish his continued disability. Although Curry provided some information related to his condition during those years, the information he provided was inconsistent and incomplete. Consequently, in July 2007, Trustmark notified Curry that it had discontinued his benefits, effective June 26, 2007, until it received the information it requested under the policy.

For the next year, Trustmark and Curry exchanged correspondence regarding the discontinuation of benefits and the scope of the information requested by Trustmark. During that period, Trustmark extended three additional months of benefits to Curry. Finally, in the spring of 2008, Trustmark requested that Curry undergo an IME to determine his continued eligibility for benefits. Curry refused to submit to the IME unless Trustmark paid him additional benefits that he alleged Trustmark owed. When Curry failed to attend the IME, Trustmark denied any additional benefits, effective June 30, 2008, and closed Curry's claim on September 29, 2008.

On July 27, 2011, Curry filed suit against Trustmark and Continental, alleging breach of contract. In ruling on Trustmark's motion for summary judgment, the district court determined that Curry's cause of action for breach of contract accrued anew each month benefits were not paid. Consequently, although the court concluded that Curry's action for breach between September 25, 2007, and July 27, 2008, was untimely under Maryland's three-year statute of limitations, it addressed on the merits all alleged monthly breaches occurring after July 27, 2008. Because it found no breach of contract in Trustmark's requirement that Curry submit to an IME and provide continuing proof of loss as a prerequisite for payment of his benefits, the district court granted summary judgment to the insurance companies.

We review de novo the district court's grant of summary judgment. Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). We may uphold that decision on "any grounds apparent from the record." United States v. Smith, 395 F.3d 516, 519 (4th Cir. 2005).

4

II.

A.

In Maryland, a breach of contract action must be filed within three years of the date it accrues. Md. Code Ann., Cts. & Jud. Proc. § 5-101.[1] Typically, the period of limitations begins to run from the date of the alleged breach. See Jones v. Hyatt Ins. Agency, Inc., 741 A.2d 1099, 1104 (Md. 1999).

However, actions arising from "alleged breaches of a continuing contractual obligation" are not wholly barred by the statute of limitations merely because one or more of those alleged breaches occurred earlier in time. Singer Co. v. Balt. Gas & Elec. Co., 558 A.2d 419, 425 (Md. Ct. Spec. App. 1989). Rather,

> where a contract provides for continuing performance over a period of time, each successive breach of that obligation begins the running of the statute of limitations anew, with the result being that accrual occurs continuously and a plaintiff may assert claims for damages occurring within the statutory period of limitations.

Id. at 426

In this case, the district court determined that Trustmark "breached the contract each time [it] failed to pay benefits for a period during which [Curry] was disabled." Curry v. Trustmark

---

[1] Because this case arises under our diversity jurisdiction pursuant to 28 U.S.C. § 1332, we apply Maryland law.

5

Ins. Co., No. 11-cv-2069-JKB, 2013 WL 3716413, at *4 (D. Md. July 15, 2013). Because it concluded that "[e]ach failure to pay monthly benefits . . . is a separate and independent breach," the district court found timely "claims for payments that were not due until after July 27, 2008." Id.

We disagree. Although we have found no authoritative Maryland precedent applying the "continuing breach" theory to an insurance disability policy, the Court of Appeals of Maryland has opined, in the context of a tort action, that a similar theory does not apply to the "continuing effects of a single earlier act." MacBride v. Pishvaian, 937 A.2d 233, 240 (Md. 2007), overruled on other grounds by Litz v. Maryland Dep't of Env't, 76 A.3d 1076, 1090 n.9 (Md. 2013); see also Poole v. Coakley & Williams Const., Inc., 31 A.3d 212, 238 n.24 (Md. 2011) (where the plaintiff "did not allege ongoing tortious conduct, but only that resulting in a single injury incurred on one day"); Bacon v. Arey, 40 A.3d 435, 469 (Md. Ct. Spec. App. 2012) (where the plaintiff's allegations involved simply "the continuing ill effects of prior tortious acts").

Other courts have rejected a broad application of a continuing breach theory of accrual. For example, federal district courts in Maryland have concluded that while harm in a given case may be continuous, often there exists only a single violation or breach "from which all of Plaintiff's harm flowed."

6

Montrose Educ. Servs., Inc. v. Sylvan Learning Sys., Inc., No. RDB 06-308, 2007 WL 979923, at *5 (D. Md. Mar. 30, 2007) (quoting Ruddy v. Equitable Life Assurance Soc., No. DKC 00-70, 2000 WL 964770, at *5 (D. Md. June 20, 2000)).

In the insurance context, both the Tenth and Eleventh Circuits have rejected the idea that disability policies are installment contracts giving rise to continuing breaches for each unpaid monthly benefit. See Lang v. Aetna Life Ins. Co., 196 F.3d 1102, 1105 (10th Cir. 1999) (borrowing Utah law to determine the statute of limitations under ERISA and holding that characterizing disability policies as installment contracts would "undermine the overriding purpose of a statute of limitation"); Dinerstein v. Paul Revere Life Ins. Co., 173 F.3d 826, 828 (11th Cir. 1999) (applying Florida law and holding that the cause of action at hand was not for a debt "payable by installments" but rather sought "to define the rights and obligations of the parties under the original insurance contract").

Some courts have reached the opposite conclusion, treating a disability insurer's failure to pay benefits as a breach of an installment contract, and therefore concluding that the statute of limitations runs separately as to each missed payment. See, e.g., Pierce v. Met. Life Ins. Co., 307 F. Supp. 2d 325, 330 (D.N.H. 2004) (collecting cases). However, the Ninth Circuit

7

has distinguished between the "denial of a basic entitlement to benefits on the one hand, and the denial of an entitlement to recover a particular periodic installment on the other." Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program, 222 F.3d 643, 650 (9th Cir. 2000) (applying California law). In the context of a pension plan's refusal to pay benefits, Wetzel instructs that the right to receive periodic pension benefits is a "continuing one" that would give rise to an installment contract; however, such a duty does not exist where the right to receive the pension itself has not first been established. See id.

Similarly, the issue here is whether the disability benefits are "owed in the first place." Dinerstein, 173 F.3d at 829. Curry alleges that because his back injury rendered him disabled under his disability insurance policy, he is owed benefits under the policy. According to Curry, then, Trustmark's refusal to pay benefits after September 25, 2007, constitutes a breach of contract. However, the policy does not provide Curry an unconditional right to receive benefits in perpetuity; rather, his receipt of benefits is subject to his providing adequate continuing proof of loss. Trustmark has maintained that it did not owe Curry additional benefits because he failed to provide this continuing proof of loss. Therefore, because the alleged breach arose from Trustmark's denial that it

8

owed Curry benefits at all, no installment contract exists, and the continuing breach theory is not applicable.[2]

## B.

We turn next to Curry's contention that the alleged breach occurred, and the statute of limitations began running, when Trustmark closed his claim for benefits on September 29, 2008. Curry presses two arguments on this point. First, he says that applicable law demonstrates that, in the context of a disability policy, a cause of action for breach accrues only after an insurer formally denies the claim. Second, he contends that even if his breach of contract action accrued earlier, he could not possibly have known about it until September 2008, thus tolling the statute of limitations until that point. We reject both arguments, addressing each in turn.

## 1.

As we have discussed, the statute of limitations on a contract action begins to run from the date of the alleged breach. Jones, 741 A.2d at 1104. In order for a cause of

---

[2] We find misplaced the district court's reliance on two district court cases to establish the applicability of a continuing breach theory. See Curry, 2013 WL 3716413, at *4 (citing Mut. Life Ins. Co. of N.Y. v. Moyle, 116 F.2d 434 (4th Cir. 1940) and Medina v. Provident Life & Accident Ins. Co., No. L-10-3146, 2011 WL 249502 (D. Md. Jan. 24, 2011)). These cases say nothing about accrual of the statute of limitations. Rather, they involve only the determination of the amount in controversy for jurisdictional purposes.

9

action for breach of contract to exist, a party must show contractual obligation, breach of that obligation, and damages. See, e.g., Kumar v. Dhanda, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011). Given that Curry's cause of action for breach is based on Trustmark's non-payment of benefits owed under the contract, it seems an unremarkable proposition that his action for alleged breach of contract arose when Trustmark stopped paying benefits on June 30, 2008.[3]

Curry disagrees, arguing that because Trustmark did not formally close his claim for benefits until September 29, 2008, he had no right to bring an action before then. Although he admits that no case law exists evaluating specifically "when claims for breach of a disability insurance contract accrue for the purpose of the statute of limitations," Appellant's Br. at 14, he points to case law from Maryland and the U.S. Supreme Court to support his argument that the statute of limitations accrues only after an insurer formally denies a claim. We find these cases readily distinguishable.

---

[3] Although Trustmark initially stopped paying benefits on June 26, 2007, Trustmark's equivocation in three times paying Curry an additional month of benefits (on August 1, 2007, February 27, 2008, and April 22, 2008) calls into question its original decision to stop benefit payments. Thus, as we are required to do, we take the facts in the light most favorable to Curry, and assume that, at the very latest, Trustmark terminated additional benefit payments on June 30, 2008.

For example, <u>Vigilant Insurance Co. v. Luppino</u>--on which Curry heavily relies--involved an insurer's denial of its duty to defend the insured under a homeowner's insurance policy. 723 A.2d 14, 15 (Md. 1999). Although the insurer denied a defense to Luppino at the onset of an underlying tort lawsuit filed against Luppino by third parties, Luppino did not file a breach of contract action against the insurer until four years later, near the end of the tort lawsuit.

On the issue of whether the three-year statute of limitations barred Luppino's action, the Court of Appeals of Maryland held that because the duty to defend is a "continuing one," involving personal services, the statute only began to run from the time that duty could be completed--in that case, at the termination of the underlying lawsuit. <u>See</u> <u>id.</u> at 18. Notably, <u>Luppino</u> involved the "continuation of events" exception to the strict "date of the wrong" rule of accrual.[4] <u>See</u> <u>id.</u> Here, Curry does not contend that an insurer's duty to pay disability

---

[4] The "continuation of events" exception typically arises in cases involving services or treatment (as by a lawyer or physician), along with a "relationship" between the parties that would give one party no reason to question the quality of the services or treatment. <u>See, e.g.,</u> <u>Frederick Rd. Ltd. P'ship v. Brown & Sturm</u>, 756 A.2d 963, 974–75 (Md. 2000). However, as in <u>Luppino</u>, this tolling doctrine has also been applied "where there is an undertaking which requires a continuation of services, or the party's right depends upon the happening of an event in the future." <u>Luppino</u>, 723 A.2d at 18 (quoting <u>W., B. & A. Elect. R.R. Co. v. Moss</u>, 100 A. 86, 89 (1917)).

benefits is a duty involving services that should be subject to this common law exception. Consequently, Luppino is inapplicable to this case.

Curry's reliance on Lane v. Nationwide Mutual Insurance Co., 582 A.2d 501 (Md. 1990), is similarly misplaced. Lane involved a claim for recovery of uninsured motorist benefits, where the Lanes notified their insurer of their suit against an uninsured motorist but the insurer made no determination regarding the status of their claim at that time. 582 A.2d at 502. When, four years later, the Lanes sued the insurer to recover uninsured motorist benefits, the insurer argued that their action was time-barred. Id.

The Court of Appeals of Maryland held that because Nationwide did not deny benefits at the time the Lanes notified them of the lawsuit against the uninsured motorist, no breach occurred that would have caused the statute of limitations to begin running. See id. at 505. Here, in contrast, Trustmark denied benefits to Curry both on June 26, 2007, when it preliminarily ceased paying benefits, and on June 30, 2008, when it unequivocally terminated Curry's benefit payments. As a result, Lane is distinguishable.

Curry also misreads the Supreme Court's decision in Mobley v. New York Life Insurance Co., 295 U.S. 632 (1935), as standing for the proposition that a disability policy is breached--and

12

therefore that the statute of limitations begins running--only when the policy is absolutely repudiated. There, a disability insurer initially refused to pay benefits after determining Mobley was not disabled, but then it reinstated benefits after further investigation. Nevertheless, in his lawsuit Mobley argued that the insurer's actions "fully repudiated" the policy, such that he was entitled to expectation damages in the amount of benefits he would have received over the course of his lifetime. Mobley, 295 U.S. at 636. Because it found that the insurance company's actions evidenced intent to adhere to the insurance policy, the Court held that the contract was not "absolutely and finally" broken such that Mobley could recover the damages he sought. Id. at 638.

However, the Court did not--as Curry seems to think--conclude that breach requires total repudiation of the contract. Notably, the Court's holding supports the opposite argument that an insurer's denial of benefits alone may constitute a breach: "Mere refusal, upon mistake or misunderstanding as to matters of fact or upon an erroneous construction of the disability clause, to pay a monthly benefit when due is sufficient to constitute a breach of that provision . . . ." Id. (emphasis added).

To hold that an insured cannot bring an action until an insurer formally denies the claim for benefits would, as the district court noted, allow insurers to "prevent policy holders

13

from suing by continuing in perpetuity to consider the claims open and the denial of benefits preliminary." Curry, 2013 WL 3716413, at *3 n.5. This cannot be so. Therefore, we conclude that Curry's cause of action for breach of contract arose--and the statute of limitations began to run--when Trustmark terminated Curry's monthly benefit payments on June 30, 2008.[5] As a result, his suit, filed on July 27, 2011, falls outside the limitations period.[6]

2.

Curry nevertheless contends the limitations period should have been tolled under Maryland's discovery rule, which delays accrual of the statute of limitations when a party neither knows nor reasonably should have known of a breach. See Poffenberger

---

[5] Trustmark's August 4, 2008, payment of two years' worth of "Social Insurance Substitute Benefits" does not affect our conclusion. Under Curry's policy, payment of these additional benefits was contingent on Curry's eligibility for his monthly disability benefits. Trustmark's payment of these benefits only through September 25, 2007--the same date through which Trustmark paid disability benefits--simply reflects Trustmark's earlier discontinuation of benefits past that date.

[6] We reject Curry's contention that, even though a plaintiff "is not precluded from filing a lawsuit when an insurer denies a monthly benefit," the statute of limitations does not begin to run "until there is a final termination of the contract by the insurer." Appellant's Br. at 15 n.8. To the contrary, Maryland courts have expressly recognized that a cause of action accrues where a plaintiff "could have maintained his action to a successful result." Goldstein v. Potomac Elec. Power Co., 404 A.2d 1064, 1069 (Md. 1979); see also Luppino, 723 A.2d at 19 (quoting Moss, 100 A. at 89).

14

v. Risser, 431 A.2d 677, 680 (Md. 1981). Specifically, Curry argues that even if his cause of action arose when Trustmark discontinued paying his monthly benefits, he was not aware of the alleged breach until Trustmark closed his claim on September 29, 2008. However, both the subjective and objective evidence suggests that Curry knew he had an action for breach before July 27, 2008.

First, by Curry's own admission, he believed Trustmark breached the terms of the insurance policy when it stopped paying him benefits. Specifically, Curry testified in his deposition that he considered Trustmark in breach of its obligations as of a January 9, 2008, letter he sent to Trustmark. Further, Curry never disputed his receipt of Trustmark's June 30, 2008, letter, in which it unequivocally denied Curry additional benefits until he produced adequate proof of continuing loss. These facts establish that Curry both knew and should have known of any alleged wrong prior to July 27, 2008. We therefore conclude that the discovery rule did not toll the limitations period.

III.

For the reasons given, we affirm the district court's judgment.

AFFIRMED

15